**In re Keith S. DIGGS, Kendra L. Diggs, Debtors.**

**Bankruptcy No. B–95–51050 C–13W.**

United States Bankruptcy Court, M.D. North Carolina. Winston–Salem Division.

Jan. 16, 1998.

J. Michael Fields, Ward & Smith, P.A., Greenville, NC, for creditor.

Kathryn L. Bringle, Winston–Salem, NC, Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

CATHERINE R. CARRUTHERS, Bankruptcy Judge.

This matter came before the Court, after due and proper notice, on December 10, 1997, upon a Motion by the Trustee to disallow the claim of Creditor First Citizens Bank and Trust Company [hereinafter "First Citizens"] due to the deficiency claim not being filed timely, and that no funds be disbursed on this claim by the Trustee or by the Debtors. An Objection to the Trustee's Motion is also before the Court. Appearing before the Court were J. Michael Fields, Attorney for First Citizens, and the Chapter 13 Standing Trustee, Kathryn L. Bringle.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 151, 157, 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B) which this court may hear and determine.

## FINDINGS OF FACT

1. On March 4, 1994, the Debtors executed a note in favor of First Citizens in the original principal amount of $61,000.00.

2. On March 4, 1994, the Debtors executed in favor of First Citizens a Deed of Trust in order to secure the Note covering certain real property located in Anson County, North Carolina [hereinafter "the property"].

3. On October 19, 1995 the Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code.

4. On November 2, 1995, First Citizens filed a secured Proof of Claim with the Chapter 13 Trustee in the amount of $62,384.83.

5. On November 18, 1996, First Citizens filed a Motion for Relief from Automatic Stay.

6. On January 14, 1997, Chief Judge William L. Stocks of the Bankruptcy Court entered an order lifting the automatic stay as to the property. Pursuant to that Order, First Citizens was granted until July 31, 1997 to complete foreclosure and file a deficiency claim, with the deficiency claim to be allowed as a general unsecured claim absent objection. The January 14, 1997 Order went on to provide: "[ordered] that the release of the real property will be deemed in full satisfaction of the debt owed to First Citizens if First Citizens fails to file a deficiency claim by this deadline."

7. On March 5, 1997, First Citizens hired George C. Bower, Jr. to serve as Substituted Trustee in the foreclosure action.

8. On June 10, 1997, after proper filings with the Anson County Clerk of Superior Court, a foreclosure hearing was held, and an Order Allowing Foreclosure was entered by the Anson County Clerk of Superior Court.

9. Although the foreclosure sale was initially to be held on July 3, 1997, the sale was postponed and subsequently held on July 16, 1997, because the Substituted Trustee initially forgot to publish the Notice of Sale.

10. The tenth day following the sale fell on a Saturday, therefore the Substituted Trustee and First Citizens treated the upset bid period as expiring at 5:00 p.m. on Mon-

day, July 28, 1997 pursuant to N.C. Gen.Stat. § 45–21.27(a).

11. On July 29, 1997 First Citizens was notified of the sale proceeds which would be applied toward the secured obligation after costs.

12. On July 30, 1997 First Citizens prepared the Deficiency Proof of Claim and a cover letter and mailed them from Raleigh, North Carolina to the Chapter 13 Standing Trustee in Winston–Salem.

13. On August 1, 1997 the Standing Trustee received the proof of claim from First Citizens, one day after the deadline for filing a deficiency claim.

14. At no time did First Citizens request an extension of the time period to file a deficiency claim.

15. On October 21, 1997, the Trustee moved that First Citizens deficiency claim be disallowed and that no funds be disbursed on the claim inasmuch as the deficiency claim was not timely filed. Objections to the Motion were to be filed within forty (40) days.

16. On November 28, 1997, First Citizens objected to the Trustee's Motion for Disallowance of the Claim. The Court heard First Citizens' Objection on December 10, 1997.

17. First Citizens provided the Court with an affidavit from a banking officer but did not introduce any witnesses before the Court.

18. On November 28, 1997 First Citizens also filed a Motion for Reconsideration regarding the Court's January 14, 1997 Order asking the Court to extend the deadline to file a deficiency claim imposed by the Order. This Motion for Reconsideration is based upon the same arguments stated in First Citizens' Objection to the Trustee's Motion for Disallowance of the Claim heard by this Court on December 10, 1997. Accordingly, this Opinion applies to First Citizens' Motion for Reconsideration as well.

1. First Citizens only argued for equity and justice in its Objection and Motion for Reconsideration

## CONCLUSIONS OF LAW

The issue before the Court is whether First Citizens, who is ordered by the Court to file a deficiency claim within a specific time period or have the deficiency claim barred, should be allowed to file a late deficiency claim.

In First Citizens' Objection to the Trustee's Motion, First Citizens asserts that the Court has the authority to review and reconsider its previous interlocutory order. *See Zimzores v. Veterans Admin.*, 778 F.2d 264, 266–67 (5th Cir.1985), *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562 (7th Cir.1982). Rule 3008 of the Federal Rules of Bankruptcy Procedure authorizes the Court to reconsider claims. Rule 3008 states:

> A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

First Citizens asserts that there would be no prejudice to the estate if the deficiency claim is allowed since this is a Plan that is projected to generate a one hundred per cent (100%) return to all creditors. The Court strongly disagrees. The Trustee noted for the Court that the Debtors are currently paying $800.00/month and that the Plan will be completed in fifty-six (56) months. If First Citizens' deficiency claim is allowed, the payments would need to increase to $1,358.00/month in order to complete the Plan in sixty (60) months. The Trustee informed the Court that the Debtors released their house because they could not afford the higher payment that would have been required if the house was under the Plan. This Court finds that the addition of First Citizens' deficiency claim would prejudice the estate.

█ Finally, although First Citizens does not argue before this Court for an allowance of their late-filed deficiency claim based on excusable neglect pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure, this Court finds it proper to analyze First Citizens' claim under the excusable neglect standard.[1]

and did not raise excusable neglect. Based on this Court's reading of *Pioneer Investment Serv.*

Rule 9006(b)(1)(2) states that the court may with respect to enlargement of time: on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

The standard for determining when the court should consider an act excusable was set forth by the United States Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (applying an excusable neglect standard when examining the allowance of a late filed proof of claim).[2] Rule 9006 applies when a party is asking the Court for an enlargement of time. *Resolution Trust Corp. v. SPR Corp. (In re SPR Corp.),* 45 F.3d 70 (4th Cir.1995) (applying the *Pioneer* test when examining the failure to make a timely filing). Rule 9006(b)(1) requires that excusable neglect must be found in order for the court to enlarge a time period "[i]f the motion is made after the deadline has passed." *Id.* at 71.

The Court in *Pioneer* set forth a two part test for determining whether excusable neglect can be found. First, the delay must be the result of neglect, such as delay "caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer,* 507 U.S. at 388, 113 S.Ct. at 1494. Second, the party's neglect must be "excusa-

ble." *Id.* at 395, 113 S.Ct. at 1498. In examining the excusable factor, the Court should examine

the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* This Court finds that upon applying the excusable neglect standard set forth in *Pioneer,* First Citizens' late filed deficiency claim should not be allowed on the basis of excusable neglect.

First Citizens' actions can certainly be described as "carelessness" or "a mistake" within the *Pioneer* definition of neglect. As stated in the affidavit attached to First Citizens' Objection, the bank officer did not send the deficiency claim until the day before the filing deadline. The affidavit notes that the information could not be gathered sooner because the Substituted Trustee, chosen by First Citizens, caused the foreclosure sale to be held later than originally planned. In any event, no extension was asked for nor was the claim sent in a manner guaranteed to be received by the Trustee by the due date. The claim was sent first class mail the day before the claim was due. This could be described as carelessness on the part of First Citizens. However, this Court would not classify such action occurring "by intervening circumstances beyond the party's control."

Co. v. Brunswick Assoc., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), excusable neglect should be addressed under Federal Rule of Bankruptcy 9006 in relation to a late filed claim such as First Citizens'. The Court recognizes the limitations on the application of the excusable neglect standard set forth by the Supreme Court in *Pioneer.* The Supreme Court stated that "[t]he excusable neglect standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases." *Pioneer,* 507 U.S. at 389, 113 S.Ct. at 1495. The Supreme Court recognized that "[o]ne of the time requirements listed as excepted in Rule 9006(b)(3) is that governing the filing of proofs of claim in Chapter 7 cases. Such filings are governed exclusively by Rule 3002(c)." *Id.* at 389, n. 4, 113 S.Ct. at 1495, n. 4. Inasmuch as this case involves a late-filed deficiency claim with a bar date set by court order rather than as set forth in Rule 3002(c), this Court finds that the excusable neglect analysis set forth in *Pioneer* is

applicable. *See In re Brown,* No. 96–13557C–13G (Bankr.M.D.N.C. Aug. 18, 1997) (applying the excusable neglect analysis established in *Pioneer* to a motion by the Chapter 13 Standing Trustee to disallow a late-filed deficiency claim).

2. Although the United States Bankruptcy Court for the Middle District of North Carolina in *Brendle's, Inc. v. Dazey Corp. (In re Brendle's, Inc.),* Ch. 11 Case No. 96–50495C–11W, Adv. No. 97–6008 (Bankr.M.D.N.C. July 21, 1997), concluded that the Fourth Circuit's analysis in *Heyman v. M.L. Marketing Co.,* 116 F.3d 91 (1997), was more applicable than the *Pioneer* analysis with respect to the standard for excusable neglect for purposes of obtaining relief from a default judgment under Rule 60(b) of the Federal Rules of Civil Procedure, the test set forth by the United States Supreme Court in *Pioneer* is controlling with respect to requests for enlargement of time under the excusable neglect standard in Federal Rules of Bankruptcy Procedure 9006.

*Pioneer,* 507 U.S. at 388, 113 S.Ct. at 1495. At most First Citizens would argue that the intervening circumstance was a delay by the United States mail system. While such an argument would seem plausible if the claim had been mailed much earlier, the fact that an envelope was not received the very next day after it was mailed is not a sufficient intervening circumstance to meet the *Pioneer* definition of neglect.

Even if First Citizens' carelessness or mistake constitutes neglect, this Court does not find that such neglect is "excusable." In order to examine what should be considered excusable, the Supreme Court stated that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. In examining all of the circumstances surrounding the late filed claim, this Court does not find that First Citizens' actions fall within those factors the Supreme Court has held to be relevant.

In examining the "excusable" prong, this Court must first contemplate the danger of prejudice to the debtors in allowing First Citizens' deficiency claim. As previously stated, this Court finds that contrary to First Citizens' assertion, there would be significant prejudice to the Debtors if this claim is allowed. Not only would it take creditors slightly longer to be paid back, the Trustee noted for the Court that monthly Plan payments would be increased by $558.00. Based on the Trustee's knowledge and review of the case, the Trustee clearly indicated that this would be a hardship on the Debtors. This Court finds that it would be prejudicial to the Debtors to allow this late filed claim where the creditors were clearly put on notice of the bar date and where the Debtors justifiably relied on the Court's Order setting forth the bar date. The Order stated that if the deficiency claim was not filed *by July 31, 1997,* the property would be released in full satisfaction of the debt owed to First Citizens. The Supreme Court has noted that while deadlines may be unpleasant, "they prompt parties to act and they produce finality." *Taylor v. Freeland & Kronz,* 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992). It would be prejudicial to set forth dates for debtors to rely upon, and then disregard such deadlines without justifiable cause.

Second, the Court must examine the "length of the delay and its potential impact on judicial proceedings." *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498. This Court has previously considered the issue of late filed deficiency claims in an unpublished decision and concluded that strict compliance with the bar date is necessary. *In re Hoke,* No. B–94–50857 C–13W (Bankr.M.D.N.C. March 13, 1996).[3] This Court noted that compliance with the bar date

> is necessary to give teeth to and demand respect for this court's rulings. Moreover ... strict compliance with the terms of [the court's order] promotes the efficient administration of this debtor's bankruptcy case.

*Id.* at p. 5. While the delay was only by one day, the practice of modifying court ordered bar dates in judicial proceedings will set a dangerous precedent that this Court is not willing to make absent extreme circumstances. To allow this late filed claim would result in an additional unsecured claim in excess of $21,000. If such a claim were allowed, the Debtors would be required to increase monthly payments by $558.00 and extend the life of the Plan, *or* if excess monthly funds were not available, the Debtors would have to propose to pay their other unsecured creditors less than the original 100% which was proposed and approved by the Court. Such a situation would be inequitable as "[c]reditors filing timely claims are entitled to enjoy an increased dividend, not settle for a lower dividend based on [the tardy claimant] suddenly springing to action" *In re Lee Way Holding Co.,* 178 B.R. 976, 986 (Bankr.S.D.Ohio 1995).

Third, this Court must examine "the reason for the delay, including whether it was within the reasonable control of the mov-

3. Although First Citizens did address and attempt to distinguish this case at the December 10 hearing on the Objection, this Court is not convinced that the facts are sufficiently distinguishable.

ant ." *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498. First Citizens has clearly detailed the reasons for the delay in its affidavit of the First Citizens' bank officer, Patrice A. Sims. Ms. Sims has explained that since the Substituted Trustee failed to initially publish the Notice of Sale, the foreclosure sale was delayed and she did not receive the information necessary to calculate the deficiency claim until July 29, 1997. The claim was mailed to the Chapter 13 Standing Trustee in Winston–Salem on July 30, 1997. Ms. Sims stated that she thought the claim would be received by the next day in keeping with the July 31, 1997 deadline for filing deficiency claims.

It is worth noting that First Citizens selected the Substituted Trustee. Any reliance by First Citizens on the Substituted Trustee's failure to publish Notice of Sale causing a delay in the foreclosure sale should not be deemed outside of the control of First Citizens. Even if the Substituted Trustee's actions were outside of the control of First Citizens, the fact that the deficiency claim was ultimately filed late was absolutely within the control of First Citizens. Extensions are routinely granted when requested, and on an ex parte basis, yet no extension was sought by First Citizens neither once it discovered the postponement of the foreclosure sale nor once the bank officer did not receive the relevant information to compile the claim until July 29, 1997. Additionally, there are many mail services that offer overnight and express service. Certainly precautions could have been taken to ensure compliance with the Court's Order. It is also within the realm of possibility that the Claim could have been personally delivered. The distance from Raleigh to Winston–Salem should not have hindered First Citizens from ensuring that the Claim was timely.

Finally, this Court must examine the good faith of First Citizens. The Court does not rest its decision upon this factor. There is no evidence that First Citizens was attempting to act in bad faith.[4]

 This Court does not find that First Citizens' late filed deficiency claim can be justified on the basis of excusable neglect. Additionally, in its Objection to the Standing Trustee's Motion to disallow the late filed claim and in its Motion for Reconsideration, First Citizens argued that "[e]quity and justice would be served" by the Court's allowance of the claim.[5] To the contrary, this Court finds that equity and justice will be served by *dis*allowing the claim. Reliance on court orders and the bar date for filings set within are crucial to the integrity and efficiency of the judicial process. Absent a clear finding of excusable neglect or some other extenuating circumstance, none of which exist in this case, this Court will not disregard a previous court order setting forth a specific bar date for filing a deficiency claim.

---

4. It is relevant to note that while the Court does not find that First Citizens acted in bad faith, the deficiency claim that eventually was filed was deficient in that First Citizens provided no supporting documentation for its amended claim.

5. First Citizens only raised an "equity and justice" argument in its Objection to the Standing Trustee's Motion to disallow the claim and in its Motion for Reconsideration.