STATE ex rel. Douglas M. SIZEMORE

v.

UNITED PHYSICIANS INSURANCE
RISK RETENTION GROUP.

Court of Appeals of Tennessee,
at Nashville.

April 12, 2001.

Permission to Appeal Denied by
Supreme Court Sept. 17, 2001.

558

Renard A. Hirsch, Sr., Nashville, TN, for appellant, David S. Weed, Receiver for United Physicians Insurance Risk Retention Group.

Kenneth M. Bryant and William E. Long, Jr., Nashville, TN, for appellee, Naresh B. Dave.

## OPINION

KOCH, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S., and TODD, Sp. J., joined.

This appeal involves a dispute between a physician and the receiver of his professional malpractice insurance carrier over the timeliness of the filing of a proof of claim form involving a reported but unresolved malpractice claim. After the receiver found the claim to be untimely, the physician filed an objection in the liquidation proceeding pending in the Chancery Court for Davidson County. The trial court upheld the receiver's rejection of the claim on the ground that it did not have authority to extend the receiver's filing deadline. We reversed. After concluding that the trial court had the authority to excuse the late filing of claims on the ground of excusable neglect, we remanded the case with directions to consider whether the late filing of the claim should be

excused. On remand, the trial court excused the late filing and held that the claim should be considered timely. The receiver has appealed. We have determined that the physician is an "unexcused late filer" for the purpose of Tenn.Code Ann. § 56–9–326(b) (2000) because he has not made out a case for excusable neglect under Tenn.R.Civ.P. 6.02.

Dr. Naresh B. Dave is an orthopaedic surgeon practicing in Tampa, Florida. In 1991, he purchased a professional malpractice insurance policy from United Physicians Insurance Risk Retention Group ("United Physicians"), a captive insurance company headquartered in Tennessee. Dr. Dave's policy contained a prior acts provision extending coverage for acts and omissions occurring on or after October 1, 1987.

United Physicians had been operating since 1989. In March 1992, after the company's 1991 statement indicated that it was insolvent, Tennessee's Commissioner of Commerce and Insurance placed the company under administrative supervision and directed the company to submit a plan to correct its capital and surplus impairment. United Physicians failed to submit an acceptable plan, and in April 1992, the Commissioner filed a petition under the Insurers Rehabilitation and Liquidation Act in the Chancery Court for Davidson County requesting the appointment of a receiver for the purpose of rehabilitating the company. On May 1, 1992, the trial court placed United Physicians in receivership and approved the Commissioner's request to appoint Jeanne Barnes Bryant as special deputy receiver for the rehabilitation.[1]

United Physicians's finances continued to deteriorate rapidly. On July 16, 1992, the trial court entered an order directing the Commissioner to liquidate United Physicians and approving the appointment of Ms. Bryant as special deputy receiver for that purpose.[2] On July 24, 1992, Ms. Bryant sent a letter to all of United Physicians's policyholders, including Dr. Dave, informing them that United Physicians had been placed in receivership and that their policies would be cancelled effective August 21, 1992.

Approximately one week before receiving Ms. Bryant's memo regarding the receivership, Dr. Dave received notice from a former patient, as required by Florida law, that she intended to file a malpractice action against him based on knee surgery he had performed on her in March 1990. On August 19, 1992, Dr. Dave forwarded a copy of the patient's notice to the law firm representing United Physicians's receiver. In response, United Physicians arranged for Kenneth Deacon, a Florida lawyer, to represent Dr. Dave in the malpractice suit that the patient eventually filed.

Shortly after Dr. Dave mailed a copy of the notice of his former patient's suit to United Physicians, he received another letter from Ms. Bryant dated August 17, 1992. This letter confirmed the information contained in her July 24, 1992 letter. Enclosed with the letter was a "proof of claim" form. Ms. Bryant requested that the form be filed by July 21, 1993, and instructed Dr. Dave that "[t]his proof of claim must be filed in addition to any other claims that you have previously made." The letter also informed Dr. Dave that

1. *United Physicians Ins. Risk Retention Group v. United American Bank of Memphis*, No. 01A01–9503–CH–00096, 1996 WL 47926, at *1 (Tenn.Ct.App. Feb.7, 1996) (No Tenn. R.App.P. 11 application filed).

2. After Ms. Bryant perfected this appeal, she was succeeded by David S. Weed. Mr. Weed, as the current special deputy receiver, replaces Ms. Bryant as a party to this appeal by operation of Tenn.R.App.P. 19(c).

"the receivership is currently paying defense costs on litigation that has been filed against UPI insureds."

Dr. Dave received another letter from the receiver on April 23, 1993. This letter repeated that July 21, 1993 was the deadline for filing proof of claim forms. It also stated that failure to file a timely claim could result in the receiver discontinuing an insured's defense and could also allow the receiver to deny liability for any malpractice judgment ultimately entered against the insured. The notice exhorted the insureds to "carefully read and follow the instructions for filing the proof of claim" and concluded unambiguously in bold letters: "**The Tennessee Receiver's Office will not consider those proofs of claim received after the claim filing deadline of July 21, 1993.**"

The receiver also sent a copy of this notice to Mr. Deacon who was continuing to represent Dr. Dave in the Florida malpractice proceeding. On May 20, 1993, Mr. Deacon sent Dr. Dave another copy of the receiver's April 23, 1993 letter and a blank proof of claim form. In his cover letter, Mr. Deacon reminded Dr. Dave "that the properly executed Proof of Claim must be filed prior to July 21, 1993, if you have not already done so."

Dr. Dave evidently did not attend to this claim personally but rather delegated it to Nancy Castellana, his longtime office administrator. As soon as Ms. Castellana received Mr. Deacon's letter, she completed the proof of claim form except for the "claim number" and the "total amount claimed." On May 21, 1993, Ms. Castellana telephoned Mr. Deacon's office for this information. After speaking to Bonnie Montgomery, Mr. Deacon's litigation paralegal, Ms. Castellana faxed Mr. Deacon's office a copy of the partially-completed proof of claim form. According to Ms. Castellana, Ms. Montgomery telephoned

her later and told her that "Mr. Deacon said he would take care of it." Ms. Castellana interpreted Ms. Montgomery's statement to mean that Mr. Deacon knew both the "claim number" and the "total amount claimed" and that he would see to it that the completed proof of claim form was timely filed with United Physicians's receiver.

As far as this record shows, the proof of claim form fell between the cracks following the telephone conversation between Mses. Castellana and Montgomery. Dr. Dave and Mr. Deacon never discussed the proof of claim form, and Ms. Castellana never followed up with either Ms. Montgomery or Mr. Deacon. Accordingly, sixty days passed, and the receiver's July 21, 1993 deadline for filing proof of claim forms came and went without a claim form being filed on Dr. Dave's behalf.

On September 24, 1993, Ms. Bryant notified Dr. Dave by letter that United Physicians was now denying coverage under his policy because he had not filed a timely proof of claim form. She also informed Dr. Dave that United Physicians was discontinuing its representation of him in the pending Florida malpractice proceeding and that he should make arrangements for his own defense. As a procedural matter, Ms. Bryant also informed Dr. Dave that he had sixty days to object to her decision and that she intended to do nothing more with his claim unless she received a timely objection from him.

The receiver's "no coverage" letter startled Dr. Dave into action. He retained a lawyer in Tennessee and, on October 25, 1993, submitted a completed proof of claim form. His Tennessee lawyer also provided an explanation for Dr. Dave's failure to file the proof of claim form by the July 21, 1993 deadline and requested the receiver to accept Dr. Dave's claim as timely on the

grounds that its lateness was due to legally excusable neglect.

The receiver declined to accept Dr. Dave's proof of claim form and to reinstate his coverage. This decision significantly affected Dr. Dave in two ways. First, he was no longer being provided with legal representation in the pending Florida malpractice proceeding. Secondly, it meant that there would be no funds for his claim in the liquidation proceeding because the estimated amount of outstanding claims against United Physicians was $21.8 million, while the company's assets amounted to approximately $11 million.[3] Accordingly, Dr. Dave filed a timely objection to Ms. Bryant's decision in the trial court in accordance with Tenn.Code Ann. § 56–9–327(a) (2000).

Dr. Dave's objection was heard by the clerk and master who had been appointed by the trial court to hear objections filed by policyholders who had been denied coverage. Following a hearing, the clerk and master filed a report concluding that the delay in filing Dr. Dave's proof of claim form was excusable and recommending that the trial court invoke its power under Tenn.R.Civ.P. 6.02 to extend the receiver's filing deadline for Dr. Dave's benefit, thereby rendering his proof of claim timely. However, the trial court sustained the receiver's objection to the claim without reaching the excusable neglect issue by concluding that it lacked jurisdiction to extend the filing deadline. On appeal, we concluded that the trial court could excuse the late filing of claims on the ground of

excusable neglect and remanded the case to the trial court to determine whether Dr. Dave's failure to meet the July 21, 1993 deadline was the result of excusable neglect. *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group,* No. 01A01–9610–CH–00449, 1997 WL 181526, at *3 (Tenn.Ct.App. Apr.16, 1997) (No Tenn.R.App.P. 11 application filed). On remand, the trial court agreed with the clerk and master and held that Dr. Dave's proof of claim form should be considered timely because it had been late due to excusable neglect. Ms. Bryant has appealed the trial court's decision, and the case is before us for the second time.

## I.

### The Receiver's Consideration of Dr. Dave's Claim

The receiver first asserts that the trial court's decision to excuse Dr. Dave from the deadline for filing proofs of claim is inconsistent with Tennessee's statutes governing the liquidation of insurance companies. We disagree. This argument confuses the respective roles assigned to the receiver on one hand and the courts on the other.

### A.

In 1991, Tennessee became one of the thirty-three jurisdictions that have adopted the Insurers Rehabilitation and Liquidation Model Act ("Model Act") first drafted by the National Association of Insurance Commissioners ("NAIC") in 1977.[4]

---

3. As an unexcused late filer under Tenn.Code Ann. § 56–9–326(b), Dr. Dave had at best a Class 7 claim in the liquidation proceeding. Class 7 claims only have priority over a company's shareholders and other capital contributors, Tenn.Code Ann. § 56–9–330(a) (2000); accordingly, it appears the Class 7 claims will receive nothing in this liquidation. However, had Dr. Dave's claim been allowed, he would

have been a Class 2 claimant whose claim would have had priority over all other claims save administration expenses. Based on this record, it appears that the liquidation will produce funds for the Class 2 claimants.

4. Act of Apr. 1, 1991, ch. 142, 1991 Tenn.Pub. Acts 202, *codified at* Tenn.Code Ann. §§ 56–9–101, –510 (2000). The current version of the

The purpose of Tennessee's version of the Model Act, popularly known as the "Insurers Rehabilitation and Liquidation Act," is to protect the interests of insurers, claimants, creditors, and the general public by providing a comprehensive scheme for the regulation and dissolution of insurance companies. Tenn.Code Ann. § 56–9–101(d)(7). The Act was designed to enhance the efficiency and economy of liquidation when liquidation becomes necessary and to equitably apportion any unavoidable loss. Tenn.Code Ann. § 56–9–101(d)(3), (4).

Liquidation is an unfortunate end to an insurance company that must be handled as efficiently, expeditiously, and economically as possible. In a liquidation, the pervasive goal is to equitably apportion the unavoidable loss. The Act's provisions regarding fraudulent conveyances and preferential transfers,[5] as well as the provisions ordering the distribution of claims,[6] are all carefully tailored to maximize equity in the distribution of limited assets. The goal of the Act is to provide an orderly and complete procedure for handling claims, especially third-party claims, in which all involved make some concessions to the common necessity, and no one absorbs a disproportionate share of the loss.[7]

The Commissioner has the sole prerogative to seek the liquidation of an insurance company. Tenn.Code Ann. § 56–9–305(a); *State ex rel. Pope v. Xantus Healthplan of Tenn., Inc.*, No. M2000–00120–COA–R10–CV, 2000 WL 630858, at *8 (Tenn.Ct.App.

May 17, 2000) (No Tenn.R.App.P. 11 application filed). When the Commissioner petitions to liquidate an insurance company, the trial court's role is to decide whether the Commissioner has demonstrated one of the grounds for liquidation in Tenn. Code Ann. § 56–9–306. If the Commissioner establishes grounds for liquidation, the trial court must enter an order of liquidation naming the Commissioner as the insurance company's liquidator and vesting ownership of all the company's property by operation of law in the Commissioner. Tenn.Code Ann. § 56–9–307(a). The order of liquidation also must provide for the termination of all the company's outstanding policies. Tenn.Code Ann. § 56–9–308(a).

In a liquidation proceeding, the Commissioner's relationship with the trial court is not the same as the relationship between the trial court and a receiver in an ordinary receivership. In an ordinary receivership, the receiver serves as an officer of the appointing court. Tenn.Code Ann. § 29–1–103 (2000); *KMC Co. v. Nabors*, 572 S.W.2d 255, 257 (Tenn.Ct.App. 1977). However, in a formal proceeding to rehabilitate or liquidate an insurance company, the Commissioner does not derive his or her power from the court but rather from the statutes governing the rehabilitation or liquidation of insurance companies. Because of the Commissioner's expertise, the General Assembly has entrusted him or her with the independent judgment and discretion to follow the statutory mandates

---

Model Act can be found at 3 National Association of Ins. Comm'rs, *Model Laws Regulations and Guidelines* 555–1 (Oct.2000) ("NAIC Model Laws"). ·

5. Tenn.Code Ann. §§ 56–9–315, –318.

6. Tenn.Code Ann. § 56–9–330.

7. The Model Act was based upon Wisconsin's statutes relating to the rehabilitation and liq-

uidation of insolvent insurance companies. 3 NAIC Model Laws, at 555–69. Wisconsin has also enacted comments to its statute that provide helpful guidance to the interpretation of the Model Act. The goals for liquidation proceedings are reflected in the introductory comments to Wisconsin's statutes. Wis.Stat. Ann. § 645, at 377–78 (West 1995).

in a liquidation proceeding. *State ex rel. Pope v. Xantus Healthplan of Tenn., Inc.,* 2000 WL 630858, at *6–8.

Following the entry of the order of liquidation, the Commissioner may retain a special deputy receiver to oversee the liquidation. Tenn.Code Ann. § 56–9–310(a). The receiver is empowered to act for the commissioner (1) to give notice of the liquidation proceedings to the affected parties,[8] (2) to establish a procedure for submitting claims,[9] (3) to undertake to set aside fraudulent transfers and preferential conveyances,[10] (4) to marshal the company's assets,[11] (5) to determine the priority of the claims in accordance with the statutory priorities,[12] (6) to provide a report to the trial court containing recommendations for the distribution of the company's marshaled assets,[13] and (7) to distribute the available funds in the manner approved by the court.[14]

■ The Insurers Rehabilitation and Liquidation Act empowers the Commissioner and the receiver to take all steps reasonably calculated to prevent the piecemeal and protracted processing of claims. *State ex rel. McReynolds v. United Physicians Ins. Risk Retention Group,* 921 S.W.2d 176, 180 (Tenn.1996). Accordingly, the Commissioner and the receiver may establish a timetable and deadlines for filing claims against the insurance company, Tenn.Code Ann. §§ 56–9–311, –323, and may also take any other steps reasonably calculated to manage the liquidation consistent with the Act's stated principles of efficiency, economy, and equity.

**B.**

In a rehabilitation or liquidation proceeding, the process for dealing with third-party claims is controlled by Tenn.Code Ann. § 56–9–326. This provision, patterned after NAIC Model Act § 42,[15] provides two ways for dealing with third-party claims. It requires a third-party claimant to choose between two procedures. The third-party claimant may file a claim directly with the receiver and thereby share in the liquidation, Tenn.Code Ann. § 56–9–326(a), or the third-party claimant may exercise rights directly against the insured. This statute is drafted to encourage third-party claimants to make an early decision and preferably to participate in the liquidation rather than proceeding directly against the insured.[16]

An insured may protect whatever insurance coverage it has by filing a claim with the Commissioner or the receiver based on the third-party's claim against the insured. When such a claim is filed in a timely manner, the Commissioner or the receiver must allocate sufficient resources to pay the claim on the same prorated basis as other claims with similar priorities. Tenn. Code Ann. § 56–9–326(c). The statute also explicitly addresses how claims filed by an insured should be treated if they are not filed in a timely manner. Tenn.Code Ann. § 56–9–326(b) states, in part: "If the insured fails to file a claim by the date for filing claims specified in the order of liquidation or within sixty (60) days after mail-

---

**8.** Tenn.Code Ann. § 56–9–311(a).

**9.** Tenn.Code Ann. § 56–9–311(b).

**10.** Tenn.Code Ann. § 56–9–317.

**11.** Tenn.Code Ann. § 56–9–310.

**12.** Tenn.Code Ann. § 56–9–330.

**13.** Tenn.Code Ann. § 56–9–331.

**14.** Tenn.Code Ann. § 56–9–332.

**15.** 3 NAIC Model Laws, at 555–47.

**16.** Wis.Stat.Ann. § 645.64, cmt. to sub. (2) (West 1995).

ing of the notice required by § 56–9–311, whichever is later, such insured is an unexcused late filer."

■ We can find no provision in the Insurers Rehabilitation and Liquidation Act that empowers the Commissioner or the receiver to relieve an insured from his or her statutorily assigned status as an "unexcused late filer" if the insured, after receiving the statutorily required notice, fails to file his or her proof of claim before the applicable deadline.[17] The reason why this provision cannot be found is clear. The NAIC did not include such a provision in the Act because it would have been inconsistent with the Act's purpose to promote quick, efficient, and fair liquidations of failed insurance companies. All these goals are served by setting strict enforceable deadlines for filing claims. While deadlines may, on occasion, lead to unwelcome results, they prompt parties to act and they produce finality. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992).

Even though the Commissioner and any receiver appointed by the Commissioner may not relieve an insured of its status as an "unexcused late filer" under Tenn.Code Ann. § 56–9–326(b), they may still consider the claim and allow the insured to receive distributions under Tenn.Code Ann. § 56–9–323(d). By operation of law, however, an unexcused late filer's priority is significantly inferior to the priority accorded a timely filed claim. A timely filed claim is a Class 2 claim that must be paid after the administrative expenses arising out of the liquidation have been paid. Tenn.Code Ann. § 56–9–330(a)(2). However, a late filed claim is a Class 7 claim that has priority only over claims of the defunct company's shareholders and other capital contributors. Tenn.Code Ann. § 56–9–330(a)(7). Relegating claims of unexcused late filers to Class 7 priority reflects another effort by the NAIC to encourage rapid liquidations.

The fate of Dr. Dave's claim in the hands of the receiver is clearly controlled by Tenn.Code Ann. § 56–9–326(b). Dr. Dave's claim was based on a third-party's malpractice claim against him. He became aware of the existence of this claim in July 1992. He received two letters from the receiver, one dated August 17, 1992 and the other April 23, 1993, informing him that the deadline for filing his proof of claim was July 21, 1993. Despite these notices, he permitted the July 21, 1993 deadline to pass without filing a proof of claim. He did not file a proof of claim until October 25, 1993—over three months past the deadline. Thus, by operation of Tenn.Code Ann. § 56–9–326(b), he became an "unexcused late filer." Neither the Commissioner nor the receiver have the authority to relieve Dr. Dave of this statutory status.

The receiver may, however, consider Dr. Dave's claim if doing so will not "prejudice the orderly administration of the liquidation." However, even if the receiver determines that it can consider Dr. Dave's claim without prejudicing the orderly administration of the liquidation, the receiver does not have the statutory authority to treat Dr. Dave's claim as anything other than a Class 7 claim. The Act provides no basis on which the receiver could treat an unexcused late filer's claim as a Class 2 claim.

**17.** Tenn.Code Ann. § 56–9–323(b)(1) excuses the failure to file a proof of claim before the deadline when the claimant was not aware of the existence of the claim and files a proof of claim as soon as possible after learning about it. This case does not involve these circumstances.

Our holding that neither the Commissioner nor the receiver has the power to relieve Dr. Dave of his status as an unexcused late filer does not end the matter. We must still address the application of the excusable neglect principle in this case.

## II.

### THE TRIAL COURT'S CONSIDERATION OF DR. DAVE'S EXCUSABLE NEGLECT

The receiver mounts a two-pronged attack on the trial court's conclusion that Dr. Dave's failure to file his proof of claim by the July 21, 1993 deadline was the result of excusable neglect. First, the receiver asserts that employing a Tenn.R.Civ.P. 6.02 excusable neglect analysis is inconsistent with the Insurers Rehabilitation and Liquidation Act. Second, the receiver asserts that Dr. Dave has not carried his burden of demonstrating that his failure to file the proof of claim form by the July 21, 1993 deadline was the result of excusable neglect. While we have determined that the trial court's invocation of Tenn.R.Civ.P. 6.02 was correct, we have also determined that Dr. Dave has not substantiated his excusable neglect claim.

### A.

■ We need not tarry long with the receiver's argument that applying the excusable neglect principles in Tenn.R.Civ.P. 6.02 is inconsistent with the purpose and goals of the Insurers Rehabilitation and Liquidation Act. While the receiver's authority is limited to its authority granted by statute, trial courts do not operate under the same constraints because the Tennessee Rules of Civil Procedure augment their authority.

In the first appeal of this case, we held that trial courts have the power under Tenn.R.Civ.P. 6.02 to excuse the late filing of a claim if the claimant's failure to meet the deadline was the result of excusable neglect. *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 1997 WL 181526, at *2. This decision is now binding on the parties and the court as the law of the case. *Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 305 (Tenn.1998). Accordingly, when Dr. Dave, exercising his rights under Tenn.Code Ann. § 56–9–327, sought judicial review of the denial of his claim, the trial court appropriately considered Dr. Dave's appeal using the excusable neglect analysis in Tenn.R.Civ.P. 6.02.

### B.

■ As a general rule, actions to which a deadline has been attached should be completed before the deadline. Co-existing with this general rule is Tenn.R.Civ.P. 6.02's exception that an untimely action may be considered timely where the tardiness is due to excusable neglect. Allowing an untimely action to be effective in certain cases has been characterized as "repair work when lawyers have good reasons." *Day v. Northern Ind. Pub. Serv. Corp.*, 164 F.3d 382, 384 (7th Cir.1999). Accordingly, our task is to determine whether the trial court properly determined that Dr. Dave is entitled to some repair work under the facts of this case.

Older authorities held uniformly that inattention to court matters by a lawyer or a party would not be considered sufficient grounds to undo a result. *Totten & Bro. v. Nance*, 3 Tenn.Ch. 264, 266–67 (1877); *Cook v. Dews*, 2 Tenn.Ch. 496, 498–99 (1875). However, with the adoption in 1971 of the Tennessee Rules of Civil Procedure, the focus shifted from condemning inattention to considering excusable neglect. The United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S.Ct.

1489, 123 L.Ed.2d 74 (1993) has set out the most authoritative exegesis of the excusable neglect concept, and we incorporate that analysis for our use here.[18]

■ As the Court pointed out, a party's failure to meet a deadline may have causes ranging from forces beyond its control to forces within its control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 387–88, 113 S.Ct. at 1494. The former will almost always substantiate a claim of excusable neglect; the latter will not. However, neglect extends to more than just acts beyond a party's control and intentional acts. It encompasses "simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 388, 113 S.Ct. at 1495. Thus, the excusable neglect concept may also apply to situations in which failure to comply with a filing deadline is attributable to a filer's negligence. *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. at 394, 113 S.Ct. at 1497; *Marx v. Loral Corp.*, 87 F.3d at 1054.

■ Still, not all negligence can be indulged. To do that would read out of the excusable neglect principle the requirement that the neglect must first be found excusable. Finding whether neglect is excusable is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 395, 113 S.Ct. at 1498; *Dubuc v. Green Oak Township*, 958 F.Supp. 1231, 1241 (E.D.Mich.1997). The relevant circumstances envelop the big picture of both causes and effects, including (1) the danger of prejudice to the party opposing the late filing, (2) the length of the delay and its potential impact on proceedings, (3) the reason why the filing was late and whether that reason or reasons were within the filer's reasonable control, and (4) the filer's good or bad faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 395, 113 S.Ct. at 1498; *In re SPR Corp.*, 45 F.3d 70, 72 (4th Cir.1995); *In re Nunez*, 196 B.R. 150, 157 (9th Cir.BAP 1996). These circumstances must be weighed both with and against each other because, if considered separately, they may not all point in the same direction in a particular case. *In re Keene Corp.*, 188 B.R. 903, 909 (Bankr.S.D.N.Y.1995); *In re Nickels Performance Sys., Inc.*, 169 B.R. 647, 651 (Bankr.E.D.Tenn.1994). Accordingly, we will consider how each of these circumstances applies to the facts of this case.

**18.** In the *Pioneer* case, the Court construed excusable neglect under Bankr.R. 9006(b)(1) in the context of a business reorganization. The Court hedged in its ruling by pointing out its analysis might not govern liquidation proceedings because of "the differing policies" between reorganizations and liquidations. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 389, 113 S.Ct. at 1495. However, other courts have not limited the *Pioneer* excusable neglect analysis to proceedings involving Bankr.R. 9006. *See, e.g., Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996); *United States v. Clark*, 51 F.3d 42, 44 (5th Cir.1995); *Couch v. Private Diag. Clinic*, 133 N.C.App. 93, 515 S.E.2d 30, 37–38 (1999). This court has previously considered the *Pioneer* analysis in a case involving the liquidation of an insurance company. *State ex rel. McReynolds v. Petroleum Mktrs. Mut. Ins. Co.*, No. 01A01–9405–CH–00211, 1994 WL 581465, at *2 (Tenn.Ct.App. Oct.21, 1994) (No Tenn.R.App.P. 11 application filed). Bankr.R. 9006(b) is patterned after Fed. R.Civ.P. 6(b), *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. at 391, 113 S.Ct. at 1496, and Fed.R.Civ.P. 6(b) is identical on this point with Tenn.R.Civ.P. 6.02. *Douglas v. Estate of Robertson*, 876 S.W.2d 95, 97 (Tenn.1994). Accordingly, we have no qualms about applying the excusable neglect principles in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship* in this case.

### 1.

#### DR. DAVE'S GOOD FAITH

■ Based on our review of the record, it is apparent to us that Dr. Dave presented his untimely claim in good faith. He did not forbear filing timely in some attempt to gain advantage over other claimants. He did not hang back in hopes of getting a bigger share in the distribution. He did not obscure his claim under a bushel in an attempt to string out his medical malpractice coverage. He simply did not attend to filing his proof of claim form on time. When Dr. Dave learned that he had missed the July 21, 1993 deadline for filing proofs of claim, he promptly took steps to submit a proper claim. Nothing in this record indicates that Dr. Dave is not before the court in good faith.

### 2.

#### PREJUDICE TO THE RECEIVER

■ As used in this context, prejudice connotes unmerited, substantive harm to the opposing litigant. *See generally* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 429 (1987). A court may find prejudice where one side has been harmed by loss of opportunity to present some material aspect of its case. *State v. Burns,* 6 S.W.3d 453, 463 (Tenn.1999); *Archer v. Archer,* 907 S.W.2d 412, 416 (Tenn.Ct.App.1995). Prejudice also encompasses other types of harm to parties, such as the expenditure of money or similar detrimental changes of position by one side in reliance on the action or inaction of the other. *Archer v. Archer,* 907 S.W.2d at 416. In evaluating whether to allow an untimely filing to be effective, courts may also find prejudice to the non-requesting party where allowing the filing would burden the non-requesting party with more pre-trial discovery, additional trial preparation, and added expense, particularly when only a limited time remains for more gearing up. *TXG Intrastate Pipeline v. Grossnickle,* 716 So.2d 991, 1011 (Miss. 1997).

■ The receiver has provided us with few specifics regarding how he would be prejudiced by being required to consider Dr. Dave's late claim. Since even the most cursory summary of the Insurers Rehabilitation and Liquidation Act illustrates the many responsibilities thrust on the receiver, it is not difficult to imagine that requiring the consideration of a late-filed claim could somehow throw a monkey wrench into the works. However, our imagination is not a substitute for proof and argument. Thus, because the receiver came forward with no specific arguments demonstrating how he would be prejudiced by being required to administer Dr. Dave's claim, we decline to find that the receiver will be materially prejudiced by being required to accept and process Dr. Dave's claim. Considering one more claim is not, as a matter of law, the straw that will break the receiver's back.

### 3.

#### POTENTIAL IMPACT ON THE LIQUIDATION PROCEEDING

Liquidation of a business has been compared to euthanasia except that its purpose is not so much to stop the patient's pain as it is to assure that its creditors collect their money faster. Sol Stein, *Bankruptcy: A Feast for Lawyers* 10 (1992). The liquidation of an insolvent insurance company is not materially different. The receiver is charged with marshaling the company's assets, making the best deals possible to extricate the company from drawn out financial entanglements, bringing all the claimants and creditors to the table, prioritizing the claims against the available funds, and, once its

plan of distribution has been approved by the court, distributing the available funds until nothing is left.

In addition to the claims for unearned premiums, approximately four hundred claims for medical malpractice coverage have been filed in this liquidation proceeding. The value of these claims is approximately $21.8 million; while the value of United Physicians's assets is approximately $11 million. There are also approximately thirty-five claims that were either filed late or were not properly filed, and the receiver has estimated that the value of these claims is between $5 and $7 million. The four hundred timely claims have Class 2 priority, but the untimely claims have Class 7 priority. It appears that there is little likelihood that Class 7 claimants will receive any distribution, but there will be sufficient funds to make a distribution of some sort to the Class 2 claimants. Treating Dr. Dave's proof of claim as timely would enable him to take a distribution as a Class 2 claimant.

 The trial court, acting in accordance with Tenn.Code Ann. § 56–9–327(d), appointed the clerk and master to serve as a referee to hear objections filed by persons whose claims were denied by the receiver. Following a hearing on Dr. Dave's objections, the clerk and master concluded:

> Although each valid claim will reduce limited funds in the UPI receivership, the most relevant prejudice to be measured should be that uniquely caused by the late filing. This is fair because all claimants place a burden upon the funds as a result of their purchase of insurance and exposure to risk. Beyond the anticipated burden increased by each claimant, damage to the Insureds at the time of the late filing, balanced against the error made by Dave, was not great.

The trial court agreed and determined that the damage to other insureds should Dr. Dave's claim be allowed was "very minimal, if at all." Given the relatively small size of Dr. Dave's claim—"in excess of $15,000"—compared to the total of medical malpractice coverage claims in this receivership—approximately $21.8 million—we cannot say that the evidence preponderates against the conclusions of both the special master and the chancellor that allowing Dr. Dave's claim would have no appreciable adverse impact on the receivership proceeding.

4.

### THE REASONS FOR DR. DAVE'S FAILURE TO MEET THE FILING DEADLINE

Dr. Dave's excusable neglect argument hinges on his reasons for failing to file his one-page proof of claim before the July 21, 1993 deadline. After the United States Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, the courts have emphasized that the reasons leading to the delay remain a very important—perhaps the single most important-factor in determining whether neglect should be excusable. *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 534 (4th Cir.1996); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994); *Thomas v. Board of Educ.*, 177 F.R.D. 488, 489–90 (D.Kan.1997). In evaluating the reasons for delay, courts look at (1) whether the circumstances involved were under a party's own control, *In re Payless Cashways, Inc.*, 230 B.R. 120, 139 (8th Cir.BAP1999); *United States ex rel. Elec. Mach. Enters. of P.R., Inc. v. Fraya*, 170 F.R.D. 346, 349 (D.P.R.1997); *In re Diggs*, 220 B.R. 247, 252 (Bkrtcy.M.D.N.C.1998), and (2) whether the party was paying appropriate attention to the matter in light of the surrounding circumstances. *Dishman v. Dishman*,

37 N.C.App. 543, 246 S.E.2d 819, 822 (1978).

The courts have been reluctant to find excusable neglect in circumstances where called-for action was under the control of the party seeking relief and that party failed to act reasonably to make sure that the act was performed. *United States ex rel. Elec. Mach. Enters. of P.R., Inc. v. Fraya*, 170 F.R.D. at 349 (holding that assuming that a secretary had filed a response to a summary judgment motion was not excusable neglect); *In re Bautista*, 235 B.R. 678, 682 (Bankr.M.D.Fla.1999) (holding that the concept of excusable neglect could not be invoked to gloss over a failure to take minimum safeguards for determining that action is being taken); *In re Diggs*, 220 B.R. at 252 (holding that failure to take precautions to assure that a deficiency claim was timely filed is not excusable neglect); *In re Nickels Performance Sys., Inc.*, 169 B.R. at 652 (holding that misplacing the notice of an appealable order was not excusable neglect).

These decisions are consistent with our own post-*Pioneer* jurisprudence. In a garnishment proceeding, the garnishee invoked the excusable neglect concept as a justification for its failure to respond to the garnishment. The record demonstrated that both the garnishment and the conditional judgment order had been served on the garnishee's registered agent and that the registered agent had turned these documents over to the corporate secretary of the garnishee. The corporate secretary gave the papers to the president of the garnishee who agreed to "handle" the matter. When it came to light that the matter had not been handled, the garnishee invoked the doctrine of excusable neglect because the corporate secretary had "assumed" that the president would answer the garnishment. We declined to set aside the judgment against the garnishee on ex-cusable neglect grounds, noting that "[a] party remains under a duty to take legal steps to protect his own interests." *NCNB Nat'l Bank v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn.Ct.App.1993).

■ The purpose of giving notice of a filing deadline is to inform the claimants, as principals, of the timetable for acting. *In re Rainbow Trust*, 179 B.R. 51, 55 (Bankr.D.Vt.1995). The "reason for delay" factor militates against a late claimant when the claimant receives clear notice of the deadline and nevertheless fails to timely submit a claim due to a breakdown in the claimant's own internal procedures and communications. *In re Keene Corp.*, 188 B.R. 903, 912 (Bankr.S.D.N.Y.1995).

■ The unambiguous deadlines contained in the notices Dr. Dave received clearly put him on notice of the timetable for acting. Dr. Dave delegated the responsibility for submitting the proof of claim form to Ms. Castellana. The record does not indicate that Dr. Dave ever followed up with Ms. Castellana regarding the proof of claim form. Because Ms. Castellana was Dr. Dave's employee, her oversights regarding the filing of the proof of claim form are attributable to him. *Kennedy v. Union Charcoal & Chem. Co.*, 156 Tenn. 666, 670, 4 S.W.2d 354, 355 (1928); *Sain v. ARA Mfg. Co.*, 660 S.W.2d 499, 501 (Tenn.Ct.App.1983).

Ms. Castellana testified that she telecopied a partially completed claim form to Mr. Deacon's office and that Mr. Deacon's litigation paralegal told her that Mr. Deacon "would take care of it." For approximately two months, Ms. Castellana did not inquire of either Mr. Deacon or his paralegal about the status of the proof of claim form. For his part, Dr. Dave never followed up with Ms. Castellana or Mr. Deacon to make sure that the proof of claim form had been filed. This undisputed evidence reveals (1) an absence of any inter-

nal checks or controls in Dr. Dave's office to assure that his important business was attended to and (2) a communication breakdown not only between Dr. Dave's office and Mr. Deacon's office but also between Dr. Dave and his own staff. All of this was within Dr. Dave's control had he made it a matter worthy of his attention.

Focusing on the conduct of Mr. Deacon's office does not alter the outcome. The clerk and master found that Mr. Deacon's practice did not include filing claims for insureds and that Dr. Dave did not retain Mr. Deacon to represent him in the liquidation proceeding. As far as this record shows, the two men never discussed United Physicians's liquidation or Dr. Dave's proof of claim form. Dr. Dave did not act toward Mr. Deacon as if he expected him to be handling the liquidation claim. Despite the statement attributed to Mr. Deacon's litigation paralegal that he "would take care of it," neither Dr. Dave nor Ms. Castellana ever established even the simplest safeguards to make sure that the proof of claim form had been filed.

### III.

■ The Insurers Rehabilitation and Liquidation Act permits receivers of insurance companies in liquidation to place reasonable deadlines on the filing of claims. In this case, the receiver set a reasonable deadline for filing claims and reasonably and appropriately communicated this deadline to the persons affected by it. Dr. Dave missed this deadline and, by operation of law, became an unexcused late filer. He seeks to use the excusable neglect principle to extricate himself from this predicament. However, in the final analysis, the ability to meet the receiver's deadline was within Dr. Dave's control, and he missed the deadline only because he failed to put minimum safeguards in place to make sure that his employees and agents were taking care of his important business.

We reverse the trial court's conclusion that Dr. Dave's failure to file his proof of claim form by the receiver's July 21, 1993 deadline was caused by his excusable neglect. Accordingly, we remand the case to the trial court with directions to enter an order pursuant to Tenn.Code Ann. § 56–9–327(d) sustaining the receiver's denial of Dr. Dave's claim. Nothing in this order should be construed as preventing the receiver, exercising his discretion under Tenn.Code Ann. §§ 56–9–323(d), 326(b) from considering Dr. Dave's claim as a Class 7 claim. We tax the costs of this appeal to Naresh B. Dave for which execution, if necessary, may issue.