87 F.3d 1049
 35 Fed.R.Serv.3d 489, 20 Employee Benefits Cas. 1425,
96 Cal. Daily Op. Serv. 4589,
96 Daily Journal D.A.R. 7411,
Pens. Plan Guide P 23921D
 Sol F. MARX; Harry F. Crooks; and Dallas D. Hann,
Plaintiffs-Appellants,
v.
LORAL CORPORATION, a New York Corporation; Goodyear Tire &
Rubber Company, Inc., an Arizona Corporation;
Goodyear Aerospace Corporation, an
Arizona Corporation,
Defendants-Appellees.
Sol F. MARX; Harry F. Crooks; and Dallas D. Hann, on
behalf of himself and all others similarly
situated, Plaintiffs-Appellees,
v.
LORAL CORPORATION, a New York Corporation; Goodyear
Aerospace Corporation, an Arizona Corporation,
Defendants-Appellants.
 Nos. 93-17078, 93-17213.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1995.
Decided June 24, 1996.
 
 Daniel Offidani, Scottsdale, Arizona, for plaintiffs-appellants-cross-appellees.
 Stephen Greiner, Willkie, Farr & Gallagher, New York City, for defendants-appellees-cross-appellants Loral Corporation and Goodyear Aerospace Corporation.
 James J. Trimble, Fennemore Craig, Phoenix, Arizona, for defendants-appellees Goodyear Tire & Rubber Company.
 Appeal from the United States District Court for the District of Arizona, Paul G. Rosenblatt, District Judge, Presiding. D.C. No. CV-91-00475-PGR.
 Before BRUNETTI, THOMPSON and HAWKINS, Circuit Judges.
 MICHAEL DALY HAWKINS, Circuit Judge:
 
 
 1
 We consider here separate appeals from the district court, one concerning the merits of the litigation and the other an important procedural point concerning the timeliness of instituting an appeal. The merits appeal concerns whether oral and written representations made by the administrator of an employee benefit plan governed by ERISA bind the employer when the representations contradict the unambiguous terms of the plan. The procedural issue concerns the standard for determining "excusable neglect" under Federal Rule of Appellate Procedure 4(a)(5). Particularly, the appeal addresses whether this Circuit's long-established, strict standard for proving "excusable neglect" has been overruled by the Supreme Court's definition of "excusable neglect" in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and whether, under either standard, excusable neglect was demonstrated in connection with the plaintiffs' failure to timely file notice of their appeal.
 
 FACTS
 
 2
 The plaintiffs are members of a class comprised of former employees and surviving spouses of former employees of Goodyear Aerospace Corporation ("GAC"). GAC established and maintained an employee benefit plan (the "Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA"). GAC was a wholly-owned subsidiary of Goodyear Tire & Rubber Company ("Goodyear") when the Plan was established, and Goodyear served as the Plan administrator and fiduciary. Goodyear sold GAC to Loral Corporation ("Loral") in March 1987, after which Loral became the Plan administrator and fiduciary.
 
 The Goodyear Plan provided:
 
 3
 [t]he establishment of this Program shall not be deemed to impose upon the Employer any contractual obligation to continue its coverage and the Employer reserves the right in its sole discretion to modify or terminate the Program at any time.
 
 
 4
 The first page of the summary plan description provided that "[t]he Company reserves the right to modify or terminate these plans within the limits prescribed by law."
 
 
 5
 Shortly before Goodyear sold GAC to Loral, Goodyear representatives informed the plaintiffs that, if they remained with GAC, their benefits with Loral would be equal to or better than they had been with Goodyear. These representations were made both orally and in writing.
 
 
 6
 The summary plan description issued by Loral after it purchased GAC stated:
 
 
 7
 Loral Systems Group hopes to continue these Plans indefinitely, but reserves the right to terminate, suspend, withdraw, amend or modify the Plans at any time. Any change or termination of benefits (a) will be based solely on the decision of Loral Systems Group and (b) may apply to active employees, future retirees and current retirees as either separate groups, or as one group. If this should happen, you will be notified.
 
 
 8
 Loral later informed the plaintiffs that their benefits would be subject to change unless they chose to retire before January 21, 1989. If they opted to retire, their benefits would be "locked in" as of the date of retirement. These representations were made both orally and in writing. The plaintiffs opted to retire, thereby foregoing further employment, certain accrued benefits, and future increased pension benefits.
 
 
 9
 Despite its representations, Loral amended the plaintiffs' benefits under the Plan in July 1990. Specifically, Loral eliminated reimbursement for basic monthly premiums for supplemental Medicare coverage and increased participant co-pay contributions for prescription drugs. This lawsuit followed.
 
 PROCEDURAL HISTORY
 A. The Complaint and the Amended Complaint
 
 10
 The plaintiffs filed their complaint against Loral, GAC and Goodyear in March 1991, alleging failure to provide benefits in violation of 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty in violation of 29 U.S.C. §§ 1109 and 1132(a)(2), promissory estoppel, fraud, and an allegation against Loral of failure to provide Plan information upon request in violation of 29 U.S.C. § 1132(c).
 
 
 11
 Loral and Goodyear moved to dismiss the complaint. In an order from the bench, the district court dismissed all of the plaintiffs' claims except for the statutory penalty claim for failure to provide plan information. The court reasoned that the plaintiffs' state law contract and fraud claims were preempted by ERISA. It also concluded that the plaintiffs' claim for failure to provide benefits failed to state a claim because the Plan expressly reserved the defendants' right to modify the Plan's terms, and that their claim for breach of fiduciary duty failed to plead the allegations of fraud with the requisite specificity. The court granted the plaintiffs leave to amend their complaint.
 
 
 12
 The plaintiffs filed their amended complaint in August 1991. This three-count complaint again alleged failure to provide benefits, breach of fiduciary duty, and failure to provide Plan information upon request.
 
 B. Judgment on the Pleadings
 
 13
 After an unsuccessful attempt to have the failure to provide benefits and breach of fiduciary duty claims once again dismissed for failure to state a claim, the defendants moved for judgment on the pleadings on those two counts. The district court granted the defendants' motion.
 
 
 14
 Concerning the claim for failure to provide benefits, the court stated that 29 U.S.C. § 1132(a)(1)(B) is the ERISA equivalent of a breach of contract action (citing Miller v. Pension Plan for Employees of Coastal Corp., 780 F.Supp. 768, 770 (D.Kan.1991), aff'd, Miller v. Coastal Corp., 978 F.2d 622 (10th Cir.1992), cert. denied, 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 152 (1993)). The Plan, however, expressly allowed the defendants to amend the Plan's provisions, thereby suggesting that no "breach" occurred when defendants decreased the plaintiffs' benefits. Moreover, neither oral nor written representations were sufficient to modify the terms of the Plan. The court noted that, as a result, the plaintiffs relied upon fraud and estoppel theories to support their claim.[1] Neither theory, however, was sufficient to save the plaintiffs' claim. In Olson v. General Dynamics Corp., 960 F.2d 1418 (9th Cir.1991), cert. denied, 504 U.S. 986, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992), we held that fraud claims are preempted by ERISA's statutory scheme; and under Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821-22 (9th Cir.1992), equitable estoppel principles apply under ERISA only when the provisions of the plan are ambiguous, which they were not in this case.
 
 
 15
 The district court also concluded that judgment on the pleadings was appropriate on the plaintiffs' breach of fiduciary duty claim under 29 U.S.C. § 1109 because relief under that provision "is limited to relief protecting the integrity of the plan as a whole and does not extend to individual plan participants." (Quoting Williams v. Caterpillar, Inc., 944 F.2d 658, 665 (9th Cir.1991)). Because the plaintiffs sought recovery on their own behalf, rather than for the Plan as a whole, defendants were entitled to judgment.
 
 C. The Appeal
 
 16
 The plaintiffs appealed the district court's ruling on September 24, 1993--31 days after the court entered its judgment. The same day, the plaintiffs, unaware that their notice of appeal was untimely, filed a Motion to Hold Appeal in Abeyance, or in the Alternative, Motion for Extension of Time to Re-file Notice of Appeal. According to the motion, additional time was needed for the plaintiffs' counsel to meet with all the members of the plaintiff class to discuss whether an appeal was appropriate. The motion indicated that the plaintiffs were scheduled to meet on October 18, 1993, and therefore requested that the appeal be held in abeyance until October 30 or that the plaintiffs be allowed to refile their notice of appeal on that date.
 
 
 17
 Defendants opposed the motion, arguing that the plaintiffs' notice of appeal was untimely under Fed. R.App. P. 4(a)(1), and that any extension of time was therefore inappropriate. In reply, the plaintiffs acknowledged that their notice of appeal was untimely, explaining the late filing as follows:
 
 
 18
 Unfortunately, when the time within which to file a Notice of Appeal was docketed, it was docketed for the 24th of September for the Judgment filed on the 24th of August, a period of thirty-one days. This error was a result of a failure to realize that August contained thirty-one days. Therefore, the Notice of Appeal ... [was] filed one day late.
 
 
 19
 Despite the late filing, the district court granted the plaintiffs' motion for extension of time on October 22, 1993, and allowed them "the full amount of time granted within Fed. R.App. P. 4(a)(5)." In its order, the district court relied upon Pioneer Inv., supra, in which the Supreme Court interpreted the standard for "excusable neglect" under Bankruptcy Rule 9006(b)(1). The district court concluded that, under the Pioneer Inv. standard, the difficulties the plaintiffs' counsel encountered in arranging a meeting with the class the plaintiffs amounted to excusable neglect.
 
 
 20
 The plaintiffs filed their second notice of appeal on October 29, 1993. Defendants filed a motion to dismiss the appeal with this court. A motions panel denied that motion on December 6, 1993. Defendants then brought a separate appeal to this court, challenging the district court's order granting the plaintiffs the extension of time in which to file their second notice of appeal.
 
 STANDARD OF REVIEW
 
 21
 A district court's order granting a party an extension of time in which to file a notice of appeal is reviewed for abuse of discretion. Pratt v. McCarthy, 850 F.2d 590, 591 (9th Cir.1988). This court reviews a district court's grant of judgment on the pleadings de novo. 3550 Stevens Creek Assocs. v. Barclays Bank, 915 F.2d 1355, 1357 (9th Cir.1990), cert. denied, 500 U.S. 917, 111 S.Ct. 2014, 114 L.Ed.2d 101 (1991).
 
 DISCUSSION
 
 22
 I. The District Court's Grant of an Extension of Time to File Notice of Appeal
 
 
 23
 We have previously established a strict standard for demonstrating excusable neglect. The standard allows an extension of time only under extraordinary circumstances where injustice would otherwise result. Pratt, 850 F.2d at 592-93 (citing Alaska Limestone Corp. v. Hodel, 799 F.2d 1409, 1411 (9th Cir.1986) (per curiam); Islamic Republic of Iran v. Boeing Co., 739 F.2d 464, 465 (9th Cir.1984) (per curiam); and other Ninth Circuit cases). "Thus, we require both extraordinary circumstances preventing a timely filing and injustice resulting from denying the appeal." Pratt, 850 F.2d at 593 (emphasis in original). Inadvertence or mistake of counsel does not constitute excusable neglect. Alaska Limestone Corp., 799 F.2d at 1411.
 
 
 24
 Acknowledging this stringent standard, the district court nevertheless found that the plaintiffs' actions constituted "excusable neglect," as that term was defined by the Supreme Court in Pioneer Inv., 507 U.S. at 380, 113 S.Ct. at 1490. In Pioneer Inv., the Supreme Court held that, under Bankruptcy Rule 9006(b)(1), neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." Id. at 388, 113 S.Ct. at 1495. Thus, excusable neglect includes "situations in which the failure to comply with a filing deadline is attributable to negligence." Id. at 394, 113 S.Ct. at 1497.
 
 
 25
 The Supreme Court concluded in Pioneer Inv. that the determination of whether neglect is "excusable" is ultimately an equitable one, taking into account all the relevant circumstances surrounding the party's omission. 507 U.S. at 395, 113 S.Ct. at 1498. These circumstances include the danger of prejudice to the non-movant, the length of the delay and its potential impact upon judicial proceedings, the reason for the delay and whether it was in the reasonable control of the movant, and whether the movant acted in good faith. Id.
 
 
 26
 Although Pioneer Inv. arose in the context of the Bankruptcy Rules, its rationale would seem to apply equally to the Federal Rules of Appellate Procedure. The Court noted in Pioneer Inv. that it granted certiorari "[b]ecause of the conflict in the courts of appeals over the meaning of 'excusable neglect,' " and then, in a footnote, stated that, in addition to a conflict with regard to its application in the bankruptcy context, "[t]he Courts of Appeals similarly have divided in their interpretations of 'excusable neglect' as found in Rule 4(a)(5) of the Federal Rules of Appellate Procedure." 507 U.S. at 387, 113 S.Ct. at 1494.
 
 
 27
 The Second Circuit has expressly held that, because the analysis in Pioneer Inv. rests upon the plain meaning of the words "excusable neglect" and draws upon the use of those words in federal rules other than the Bankruptcy Rules, it is directly applicable to Federal Appellate Rule 4. United States v. Hooper, 9 F.3d 257, 259 (2d Cir.1993).
 
 
 28
 More importantly, after the oral argument in this case, we held in Reynolds v. Wagner, 55 F.3d 1426, 1429 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 339, 133 L.Ed.2d 237 (1995), that although Pioneer Inv. arose in the context of the Bankruptcy Rules, its rationale applies equally to Fed. R.App. P. 4(a)(5).
 
 
 29
 The district court in this case concluded that, under Pioneer Inv.'s "flexible understanding" of excusable neglect, see 507 U.S. at 389, 113 S.Ct. at 1495, the plaintiffs should be excused from their failure to file a timely notice of appeal:
 
 
 30
 Plaintiffs have demonstrated that consultation difficulties hindered their prompt pursuit of appeal. There is no evidence of prejudice to the Defendants or to judicial administration, and certainly no indication of bad faith.
 
 
 31
 Defendants argue, somewhat persuasively, that the difficulty that the plaintiffs' counsel encountered in attempting to schedule a meeting with all the plaintiffs was not the reason the notice of appeal was filed one day late. Rather, the late filing was solely attributable to the attorney's calendaring miscalculation.
 
 
 32
 Under the abuse of discretion standard, however, this court cannot reverse the district court's ruling unless it has a definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. See Marchand v. Mercy Medical Center, 22 F.3d 933, 936 (9th Cir.1994). The district court's analysis of the Pioneer Inv. factors in this case, although considerably lenient to the plaintiffs, was not a clear error of judgment. Accordingly, we affirm the district court's order granting the plaintiffs an extension of time to file their second notice of appeal.
 
 
 33
 II. The District Court Grant of Judgment on the Pleadings
 
 
 34
 The district court granted defendants judgment on the pleadings on the failure to provide benefits and breach of fiduciary duty claims of the plaintiffs' amended complaint. As discussed above, the court concluded that the plaintiffs' claim of failure to provide benefits, which they supported with theories of fraud and equitable estoppel, was disposed of by Olson, 960 F.2d at 1418, 1423 (holding that fraud theories are precluded by ERISA's statutory scheme), and Greany, 973 F.2d at 812, 821-22 (holding that equitable estoppel principles apply under ERISA only when the provisions of the plan are ambiguous). The court also concluded that the plaintiffs' breach of fiduciary duty claim was barred because the plaintiffs sought recovery on their own behalf, rather than on behalf of the Plan as a whole. See Williams, 944 F.2d at 658, 665.
 
 
 35
 On appeal, the plaintiffs do not address the district court's ruling on their breach of fiduciary duty claims. However, they advance three arguments against the district court's ruling on the claim for failure to provide benefits: (1) The reduction of benefits under the Plan was invalid because the Plan did not provide a procedure for its amendment and for identifying those persons with authority to amend, as is required by 29 U.S.C. § 1102(b)(3); (2) the defendants' promises of vested health care benefits were enforceable contracts independent of ERISA; and (3) the defendants should be equitably estopped from denying the benefits at issue. Each of these arguments fails.
 
 A. The Plaintiffs' 29 U.S.C. § 1102 Claim
 
 36
 Much of the plaintiffs' brief is devoted to their argument that the amendments to the Plan were invalid because the Plan did not contain, as is required by 29 U.S.C. § 1102(b)(3), a procedure for Plan amendment and for identifying the persons who have authority to amend the Plan. Defendants argue that this issue was not presented to the district court (and, indeed, was not alleged in either the plaintiffs' original or amended complaint) and therefore should not be considered by this court. Defendants are correct.
 
 
 37
 "Generally, an appellate court will not consider arguments not first raised before the district court unless there were exceptional circumstances." In re Professional Inv. Properties of America, 955 F.2d 623, 625 (9th Cir.1992) (citing Villar v. Crowley Maritime Corp., 782 F.2d 1478, 1483 (9th Cir.1986)), cert. denied, 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). We have identified three instances in which exceptional circumstances exist: "(1) review is necessary to prevent a miscarriage of justice; (2) a new issue arises while an appeal is pending because of a change in the law and (3) 'the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.' " Professional Inv. Properties, 955 F.2d at 625 (quoting Bolker v. C.I.R., 760 F.2d 1039, 1042 (9th Cir.1985)). None of these circumstances are present in this case. The plaintiffs therefore are precluded from asserting their § 1102 claim in this appeal. See, e.g., Flick v. Borg-Warner Corp., 892 F.2d 285, 288 (3rd Cir.1989) (ERISA plaintiff precluded from arguing on appeal that defendant could not revise its original plan because the plan did not contain a procedure for amendment when plaintiff failed to raise that issue in the district court).[2]
 
 B. Waiver of Breach of Contract Claim
 
 38
 The plaintiffs also argue that Loral's offers of vested health care benefits in exchange for early retirement, and the plaintiffs' acceptance of those offers by their early retirement, were enforceable contracts distinct from the Plan. The plaintiffs argue that the district court erred in failing to recognize these independent contracts.
 
 
 39
 The plaintiffs, however, have waived this argument. Ninth Circuit authority clearly states that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.1987) (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir.1981)). The rationale behind this rule is stated bluntly in Studio Carpenters Local Union No. 946 v. Loew's, Inc.: "If appellant desired to rely upon the original complaint, it should have refused to plead further." 182 F.2d 168, 170 (9th Cir.1950), cert. denied, 340 U.S. 828, 71 S.Ct. 64, 95 L.Ed. 608 (1950).
 
 
 40
 Other courts, as well as legal scholars, have criticized this Circuit's rule as "formalistic," "rigid," and "too mechanical." See Davis v. TXO Production Corp., 929 F.2d 1515, 1517 (10th Cir.1991); and 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 at 560-61 (2d ed.1990). As another panel of this court has noted, however: "We are well aware that other circuits do not look with favor upon this rule, ... but we as a panel are not at liberty to re-examine its validity." London, 644 F.2d at 814.
 
 
 41
 Here, the district court dismissed Count III of the original complaint ("Promissory Estoppel") because it concluded that this claim was preempted by ERISA. The court allowed the plaintiffs to file an amended complaint only on the narrow ground of equitable estoppel sounding in fraud. Thus, the plaintiffs did not include their independent contract theory in the amended complaint. Although it seems somewhat harsh to preclude them from raising the argument now, Ninth Circuit caselaw requires just such a result.
 
 C. Equitable Estoppel
 
 42
 The plaintiffs' final argument on appeal is that, under this court's holding in Greany, 973 F.2d at 812, defendants should be equitably estopped from denying the plaintiffs benefits under the Plan. In Greany, this Court held that "[a] plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself." 973 F.2d at 822. In other words, equitable estoppel principles are applicable under ERISA only when the terms of the plan are ambiguous.
 
 
 43
 As a threshold matter, the plaintiffs most probably have waived their equitable estoppel argument. In their response to defendants' Motion for Judgment on the Pleadings, the plaintiffs argued that "Plaintiffs' claim is not an equitable estoppel claim, and, therefore, Greany has no application to this case." In direct contradiction to that statement, however, the plaintiffs argue in their opening brief that equitable estoppel principles are in fact at issue in this case and that Greany requires that this court reverse the district court's grant of judgment on the pleadings. This about-face by the plaintiffs is, at best, inventive, especially given their earlier disavowal of an equitable estoppel theory. As a result, the plaintiffs should be barred from asserting this theory on appeal.
 
 
 44
 Despite the plaintiffs' earlier attempt to distance themselves from Greany, the district court nevertheless addressed the merits of an equitable estoppel argument in its order granting judgment on the pleadings. The court concluded that, "[b]ecause the official plan documents unambiguously reserved to the Plaintiffs' employers the right to make changes in the Plan," Greany mandated judgment on the pleadings for the defendants.
 
 
 45
 The plaintiffs argue on appeal that the Plan is ambiguous because it provides no guidance or method on how the Plan is to be modified. As noted previously, however, the Supreme Court recently held in Curtiss-Wright Corp. that amendment language similar to that in the Plan in this case sets forth a sufficient amendment procedure for purposes of 29 U.S.C. § 1102(b)(3). --- U.S. ----, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Thus, even if this court were to conclude that the plaintiffs did not waive their equitable estoppel argument, that argument fails because the Plan provides a sufficient amendment procedure and is therefore not ambiguous. Because the Plan is not ambiguous, Greany forecloses any equitable estoppel claim.
 
 CONCLUSION
 
 46
 The district court did not abuse its discretion in finding, under the factors set forth in Pioneer Inv., that the plaintiffs demonstrated excusable neglect for failing timely to file their notice of appeal. We therefore affirm the district court's order granting the plaintiffs an extension of time to file their notice of appeal.
 
 
 47
 Although the plaintiffs' appeal survives the procedural challenge, their appeal fails on the merits. We affirm the district court's order granting judgment on the pleadings.
 
 
 48
 AFFIRMED.
 
 
 
 [1]
 Although the plaintiffs argue equitable estoppel principles on appeal (a point with which defendants take issue), in their Response to Defendants' Motion for Judgment on the Pleadings the plaintiffs expressly argued that their claim "is not an equitable estoppel claim."
 
 
 [2]
 Even if the plaintiffs were permitted to present this argument on appeal, they would not succeed on their claim. The plaintiffs rely extensively in the brief on the Third Circuit's holding in Schoonejongen v. Curtiss-Wright Corp., 18 F.3d 1034 (3rd Cir.1994), which held that a plan containing an amendment procedure virtually identical to that in the Plan at issue in this case failed to satisfy § 1102(b)(3). In a recent intervening unanimous opinion, however, the Supreme Court reversed the Third Circuit. See Curtiss-Wright Corp. v. Schoonejongen, --- U.S. ----, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). The Supreme Court's opinion vitiates the position the plaintiffs take in their brief