# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
August 22, 2012 Session

## ANTHONY BERNARD MOBLEY v. PRISCILLA ANN CAFFA-MOBLEY

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVDV091089       Ross H. Hicks, Judge**

---

**No. M2011-02269-COA-R3-CV - Filed November 30, 2012**

---

The former husband appeals from the denial of his Motion to Set Aside or in the Alternative Alter or Amend the Final Decree of Divorce, which was filed 23 days after the entry of the Final Decree. In his Motion for relief, Husband sought to amend the Final Decree as it pertained to the division of the parties' mortgage debt on two homes, the division of Husband's military pension, and the award of rehabilitative alimony to Wife. We have determined the trial court should have granted partial relief as it pertained to Husband's continuing liability on the mortgage on the Miami, Florida property awarded to Wife, and to address a mathematical error pertaining to Wife's interest in Husband's military retirement. Thus, we remand for review of these two issues and affirm in all other respects.

### Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Sharon T. Massey, Clarksville, Tennessee, for the appellant, Anthony Bernard Mobley.

Priscilla Ann Caffa-Mobley, Clarksville, Tennessee, Pro Se.

### OPINION

Anthony Bernard Mobley (Husband) filed a complaint for divorce against Priscilla Ann Caffa-Mobley (Wife) on June 1, 2009. The grounds listed in the complaint were, *inter alia*, irreconcilable differences. Wife filed an answer and counter-claim also seeking a divorce on the grounds of, *inter alia*, irreconcilable differences.

The parties were married 13 years and have no children. Both parties have high school diplomas. Husband is an E-8 in the United States Army earning approximately $6,200 a month; he has been on active duty for over 22 years. During the marriage, Wife worked on and off primarily in child care or as a teacher's aide, usually earning minimum wage. She was in a serious car accident in 2008, leaving her permanently unable to perform jobs that require lifting. Wife was unemployed at the time of the divorce. Husband paid the bulk of the household bills throughout the marriage.

The parties did not always live within their means and incurred substantial debt during their marriage. In 2010 Wife received a $50,000 personal injury settlement for the injuries she sustained in the 2008 vehicular accident; she used these funds to pay off some of the couple's financial obligations.

The marital home in Clarksville, Tennessee, is worth between $185,000 and $195,000, and had an outstanding mortgage of $172,000 at the time of the divorce. The parties also own a home in Miami, Florida, which Wife inherited. When Wife inherited the property, it had a $30,000 mortgage. Husband's name was added to the title in 2003 in order for the couple to refinance the property to make some improvements to both properties and to pay off other financial obligations. The property was refinanced again in 2006, and the total outstanding debt at the time of the divorce was approximately $150,000. At the time of the divorce, the Miami residence was rented to Wife's niece who was paying $1,000 a month in rent.

The parties attempted mediation on October 14, 2010, but were unsuccessful; thus, the case went to trial. Following a hearing on April 7, 2011, the trial court ruled from the bench and declared the parties divorced. In dividing the marital estate, the court did not specifically award Wife a portion of Husband's military pension, but ordered the parties to calculate the amount for the Final Decree stating, "I think we're really in agreement about that. You know how to calculate it." As for the remaining items in the marital estate, Wife was awarded the parties' home in Miami, Florida. Husband was ordered to sell the marital property in Clarksville and to evenly divide any profit (or any remaining debt) with Wife. Each party was awarded any furniture or personal effects in their possession, including their vehicles. Wife was also awarded the parties' 2010 Federal Income Tax Refund of $4,263 to cover her attorney's fees, and Husband was held responsible for the parties' credit card debt of approximately $15,000. Finally, the court found that due to her lack of post-high school education and her physical limitations, Wife was entitled to "transitional and/or rehabilitative alimony," in the amount she requested, for four years to attend college or otherwise obtain more education.

At the close of the hearing, the attorneys were instructed to prepare the Final Decree of Absolute Divorce. The Final Decree was prepared by Wife's attorney and approved for

entry by Husband's attorney,[1] and approved by the trial court as presented. The parts of the Final Decree pertinent to the issues on appeal provide: 1) Wife is to receive the real property in Miami and "shall be responsible for any and all indebtedness associated with the property"; 2) Wife "shall receive 35% of the Husband's military disposable retirement pension from the United States Army"; and 3) "Husband shall pay to the Wife $1,800 per month retroactively from April 1, 2011, until April 1, 2012. Husband shall then pay to Wife $1,600 per month until April 1, 2013, and then Husband shall pay to the Wife $1,400 per month for 24 additional months."

The Final Decree was entered April 19, 2011. On May 12, 2011, less than thirty days after its entry, Husband filed a motion titled, "Motion to Set Aside or in the Alternative Alter or Amend," which stated that it was filed "pursuant to Rule 60.02(5), Tennessee Rules of Civil Procedure." Husband asserted that the award to Wife of 35% of his military pension was "a mistake and should be set at 27-29%." He also argued that Wife's alimony award was inequitable due in part to the fact that Husband's income decreased following the divorce. Following a hearing, the trial court denied Husband's motion in all respects. Regarding the issues relating to Husband's military pension, the Order provides: "The Final Decree, which was signed by both parties, listed the amount agreed upon by the parties. The Court does not have an obligation to correct the amount of Husband's retirement proposed even it if is a mistake." Husband timely filed this appeal.

## ISSUES PRESENTED ON APPEAL

In his brief, Husband contends the trial court erred in denying his Motion for post-judgment relief because, Husband argues, he made a clear showing of mistake due to excusable neglect. Husband also contends the trial court erred in failing to calculate the specific figure for the award of Husband's military pension and in failing to require Wife to release him from the mortgage on the Miami, Florida property within a reasonable amount of time. Husband also contends that the amount of transitional alimony awarded to Wife constitutes an abuse of discretion.

Wife is no longer represented by counsel[2] and is proceeding *pro se* on appeal. She did not file an appellee's brief in the form or substance required by the Tennessee Rules of Appellate Procedure; however, she did submit a packet of documents as her response to Husband's brief. These include her medical records, school records, the parties' tax records,

---

[1]With permission from Husband's attorney, Wife's attorney signed the final decree on behalf of Husband's attorney indicating Husband's approval for entry of the final decree as written.

[2]Wife's former counsel withdrew on September 16, 2011, and she has acted *pro se* since then.

and a list of ways Husband has treated her unfairly in a section titled, "Unfair Treatment." Wife's submission does not comply with the Tennessee Rules of Appellate Procedure and does not constitute an appellee's brief. *See* Tenn. R. App. P. 27 through 29. Nevertheless, we shall consider the issues properly raised by the parties in light of the official record before this court, *see* Tenn. R. App. P. 13, however we shall not consider any documents submitted that do not also appear in the official record provided by the trial court clerk. *See id.*

**ANALYSIS**

I.

We will first address Husband's contention that the trial court erred in denying his Rule 60 Motion to Set Aside or in the Alternative Alter or Amend.

A.

Before we consider the merits of the motion, it should be noted that Husband erroneously identified his motion to alter or amend as a Tennessee Rule of Civil Procedure 60 motion. It is actually a Rule 59 motion for relief; this is because the motion was filed within 30 days of the entry of the Final Decree. Thus, the motion was filed before the Final Decree became a final, non-appealable judgment. This circumstance was discussed in detail in *Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008) ("When Plaintiff's motion was received and filed by the clerk's office, the judgment was not yet a final, non-appealable judgment. Accordingly, Rule 59.04 is the applicable rule.").

The erroneous identification of the motion as a Rule 60 motion is of no consequence for our courts are not bound by titles of motions. *Id.* Further, Rule 59.04 allows a party to seek relief from a judgment *within thirty days* after being entered. *Id.* Conversely, Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment, meaning one that was entered more than thirty days prior to the filing of the motion. *Id.* (citing *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977)).

> A party may obtain relief pursuant to Rule 59.04 from an order entered as a result of mistake, inadvertence, or excusable neglect by a party's counsel notwithstanding the fact the party erroneously stated in its motion that it was seeking relief pursuant to Rule 60.02(1). *See Campbell*, 555 S.W.2d at 112; *Henson*, 674 S.W.2d at 310. Such was the case in *Campbell* and *Henson*, wherein this court determined that motions that were incorrectly denominated as being filed pursuant to Rules 55.02 and 60.02(1), respectively, would be treated as motions filed pursuant to Rule 59.04. In *Campbell*, the court held

that plaintiffs were "entitled to relief under Rule 59, Tennessee Rules of Civil Procedure, and that resort need not be had to Rule 60.02, upon which they rely." *Campbell*, 555 S.W.2d at 112. In *Henson*, the court stated, "We note the motion to set aside the default judgment was filed and served within thirty days of the entry of the judgment, and it should be deemed a motion for a new trial under Tenn. R. Civ. P. 59 which can afford relief from a judgment because of mistake, inadvertence, surprise or excusable neglect." *Henson*, 674 S.W.2d at 310. We will therefore consider Plaintiff's motion as a Rule 59.04 motion for relief from an order that resulted from counsel's mistake, inadvertence, or excusable neglect.

*Ferguson*, 291 S.W.3d at 387-88 (footnote omitted).

We shall now address the merits of Husband's contention that the trial court erred in denying his motion to set aside or amend the Final Decree, thereby refusing to consider the specific issues raised in the trial court.

B.

Husband contends his previous attorney made a mistake in approving the Final Decree for entry; he asserts the parties agreed to a method of calculation which would have resulted in an award to Wife of 27-30% of his military pension, but his attorney overlooked the fact that the Final Decree awarded Wife 35% of his military pension.

It is important to note that not all negligence can be indulged. To do that "'would read out of the excusable neglect principle the requirement that the neglect must first be found excusable.'" *Id.* at 388 (quoting *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001)).

An attorney's mere oversight or negligence, without more, does not automatically amount to excusable neglect. In determining whether excusable neglect existed on behalf of the moving party, "the burden is on the movant to set forth, in a motion or petition and supporting affidavits, facts explaining why the movant was justified in failing to avoid the mistake, inadvertence, surprise, or neglect." *Tenn. Dep't of Human Servs. v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985) (quoting *Tenn. State Bank v. Lay*, 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980)).

Excusable neglect may have causes ranging from forces beyond a party's control to forces within its control. *Sizemore*, 56 S.W.3d at 567. "It

-5-

may encompass simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). Accordingly, excusable neglect may apply to certain situations in which failure to comply with a filing deadline is attributable to that party's negligence. *Id.* (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 394, 113 S.Ct. 1489; *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996)).

Whether neglect is excusable is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395, 113 S.Ct. 1489; *Dubuc v. Green Oak Township*, 958 F. Supp. 1231, 1241 (E.D. Mich. 1997)). The relevant circumstances envelop the big picture of both causes and effects, including:

> (1) the danger of prejudice to the party opposing the late filing, (2) the length of the delay and its potential impact on proceedings, (3) the reason why the filing was late and whether that reason or reasons were within the filer's reasonable control, and (4) the filer's good or bad faith. These circumstances must be weighed both with and against each other because, if considered separately, they may not all point in the same direction in a particular case.

*Id.* (quoting *Sizemore*, 56 S.W.3d at 567) (other internal citations omitted). As the court did in *Ferguson* and *Sizemore*, we will consider how each of these circumstances applies to the present case, where Husband's attorney only discovered the alleged mistake in the Final Decree after its entry.

The first circumstance to be considered is "the danger of prejudice" to the party opposing the motion. *Sizemore*, 56 S.W.3d at 567-68. As explained in *Sizemore*, "prejudice connotes unmerited, substantive harm to the opposing litigant." *Id.* (citing *Sizemore*, 56 S.W.3d at 568). Mere delay does not constitute prejudice. *Id*. Courts may find prejudice "where one side has been harmed by loss of opportunity to present some material aspect of its case," or where the party opposing the motion has detrimentally relied on the filing party's inaction. *Id*. (citing *State v. Burns*, 6 S.W.3d at 463 (Tenn. 1999)).

In this case, although there would have been a modest delay if the trial court had considered the issues raised by Husband, the record does not reflect that Wife would have been prejudiced if the parties were required to re-calculate Wife's portion of the military

retirement. Husband did not raise any novel legal arguments nor did he present any new evidence. Moreover, there is nothing in the record to suggest that Wife has lost the opportunity to "present some material aspect of [her] case." *Id.* (citing *Burns*, 6 S.W.3d at 463).

The second circumstance discussed in *Ferguson* is "the length of the delay and its potential impact on [the] proceedings." 381 S.W.3d at 387. The relevant question to ask in this case is whether a substantial delay would have resulted had Husband's Motion been granted and the military pension award been re-calculated on the date the Motion was heard. We find at most the proceedings would have been minimally delayed. As stated above, Husband raised no new legal arguments and presented no new evidence. Moreover, Husband brought the alleged error to the trial court's attention within thirty days of the entry of the Final Decree and thus before the Final Decree became a final, non-appealable judgment.

The third factor to be considered is the reason why Husband's previous counsel failed to identify the alleged error until after the Final Decree was entered. *Id.* The record does not reflect why Husband, or Husband's former attorney, failed to detect the alleged error regarding the military pension on the Final Decree. Thus, this factor therefore weighs against a finding that the alleged mistake was a result of excusable neglect.

The fourth circumstance is the issue of Husband's good or bad faith in seeking to amend the Final Decree. *See id.* Husband identifies several points in the record that suggest the award to Wife of 35% of the military pension was a mistake. First, throughout the proceedings, the highest percentage Wife requested was 33%, in her pretrial brief. Second, the trial court did not specifically rule that Wife was entitled to 35%, but rather the court found that the parties were in agreement about the method for calculating the percentage, stating: "I think we're really in agreement about that. You know how to calculate it." Husband asserts the parties agreed the distribution of the military pension should be determined by dividing the number of months of marriage by the total number of months of Husband's military service and dividing that figure in half; and that this computation would afford Wife some portion between 27% and 30%. This is the formula Husband proposed in his pre-trial brief and testified to at trial. These facts have not been refuted by Wife. There is no evidence of bad faith on the part of Husband, only evidence of Husband's previous counsel's alleged failure to identify this error, if an error was made, prior to the entry of the Final Decree. Throughout these proceedings, Husband has agreed that Wife is entitled to a portion of his military pension. His position is simply that his former attorney failed to detect a clerical mistake on the Final Decree, which, he argues, would require a relatively small deduction in the pension award. Thus, we find this factor weighs in favor of excusable neglect.

Based upon the record before us, it appears the trial court focused only on the fact that Husband's previous attorney mistakenly approved the Final Decree. At the conclusion of the hearing on Husband's motion, the trial court denied the motion stating "the Court does not have an obligation to correct the amount of Husband's retirement proposed even if it is a mistake." The trial court went on to state that Husband's "remedies lie in other areas, such as suing his attorney." In its ruling from the bench, the trial court made no reference to the other circumstances discussed in *Ferguson*. The fact that the alleged mistake in this case appears to be attributable primarily to Husband's former attorney's failure to read the Final Decree closely must be balanced against the fact that: 1) this alleged error was brought to the trial court's attention quickly (less than thirty days after the entry of the Final Decree), 2) the mistake could have been easily and quickly corrected, and 3) prior to the entry of the Final Decree, the parties were in agreement that Wife was entitled to between 27% and 33% of Husband's military pension. *See Sizemore*, 56 S.W.3d at 567 ("Finding whether neglect is excusable is an equitable determination 'taking account of *all relevant circumstances . . .*' The relevant circumstances envelop the big picture of *both causes and effects*.").

Based upon the foregoing analysis, we have concluded that Husband's neglect was excusable and that the trial court erred by declining to consider the issues raised in Husband's Motion to Alter or Amend the Final Decree. Accordingly, we shall examine the issues raised in the Motion.

## II.

As it pertains to the award to Wife of 35% of Husband's military pension, we remand this issue to the trial court to determine whether an error was made by the attorneys in setting the percentage and, if so, for the trial court to determine the correct percentage of Husband's military pension Wife is entitled to receive and to enter judgment accordingly.

## III.

Husband contends the trial court erred in the division of marital property. We find no error with the division of the marital property (except for a possible error in the percentage of Husband's military retirement awarded to Wife which is discussed above).[3] However, as for the mortgage on the Miami, Florida property, we have concluded the failure to make any

---

[3]Any interest in a retirement benefit, vested or unvested, that accrues during a marriage, is marital property subject to division. *See Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *see also Batson v. Batson*, 769 S.W.2d 849 (Tenn. Ct. App. 1988).

provision for Husband's release from the debt encumbering the Miami, Florida property may be contrary to Tennessee law. *See Dobbs v. Dobbs*, 2012 WL 3201938, at *4 (Tenn. Ct. App. Aug. 7, 2012). As we explained in *Dobbs*:

> Tenn. Code Ann. § 36-4-121(c)(4) requires the court to consider "the relative ability of each party for future acquisitions of capital assets" in its division and distribution of marital property. We are concerned that failing to make any provision for Husband's release from the debt encumbering the marital residence may be contrary to § 36-4-121(c)(4). As a consequence, we remand the case for the court to determine a reasonable time for Wife to secure Husband's release from indebtedness and to amend the final decree accordingly. *See e.g. Long*, 221 S.W.3d at 10.

*Id*.

In this case, the parties' Miami, Florida property is disposed of in the Final Decree as follows:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the parties own real property located at 1763 Northwest 55th Street, Miami, Florida 33142. All interest in said property shall be divested from Husband and vested into Wife. Wife shall be responsible for any and all indebtedness associated with the property.

As was the case in *Dobbs*, pursuant to the Final Decree here, Husband remains indefinitely obligated to pay the outstanding debt and costs of collection if Wife defaults; further, the indefinite indebtedness impairs his ability to qualify for financing should he require a mortgage to obtain financing for housing or other needs in the future.[4] Therefore, based upon the record before us, we have determined that a reasonable time frame should be established by which Wife is required to satisfy the indebtedness on the Miami, Florida property for which Husband is jointly and severally liable, either by selling the property and paying the entire indebtedness or by refinancing in a manner by which Husband shall be fully released from any liability on the indebtedness. *See Dobbs*, 2012 WL 3201938, at *4.

---

[4]Husband was ordered to sell the parties' marital home in Clarksville, "with the parties equally dividing any profit or loss from the sale." The approximate value of the home, as testified to by the parties at trial, is between $185,000 and $195,000, and the home has an outstanding mortgage of $172,000. Husband was also held responsible for the parties' substantial remaining credit card debt.

For the foregoing reasons, we remand with instructions for the trial court to determine a reasonable time by which Wife shall secure Husband's full release on the indebtedness encumbering the Miami, Florida property and to enter judgment accordingly.

IV.

Husband contends the trial court erred in the amount and duration of rehabilitative alimony awarded to Wife. We find no merit to this contention.

Trial courts are afforded wide discretion in determining whether there is a need for spousal support, and if so, the nature, amount, and duration of the award. *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew,* 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000)). Absent an abuse of discretion, a trial court's decision to award spousal support will not be disturbed on appeal. *Id.* An abuse of discretion occurs when the trial court "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010)). The appellate court may not substitute its judgment for that of the trial court; rather, it should presume that the trial court's alimony decision is correct and review the evidence in the light most favorable to that decision. *Id.* at 105–06 (citing *Wright,* 337 S.W.3d at 176; *Henderson,* 318 S.W.3d at 335). The deference to trial court decisions regarding spousal support follows from the recognition that such decisions are "factually driven" and involve "the careful balancing of many factors." *Id.* (citing *Kinard,* 986 S.W.2d at 235).

In *Gonsewski,* our Supreme Court emphasized the strong preference for short-term spousal support over long-term spousal support. *Gonsewski,* 350 S.W.3d at 109. The court further recognized that the legislative preference was for support aimed at the rehabilitation of the disadvantaged spouse in order to "achieve self-sufficiency where possible." *Id.* (citing Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Bratton,* 136 S.W.3d at 605; *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003)). Rehabilitative alimony is "intended to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Id.* at 108 (citing *Robertson,* 76 S.W.3d at 340-41; *Isbell v. Isbell,* 816 S.W.2d 735, 738-39 (Tenn. 1991)). The court further noted that "[c]arefully adhering to the statutory framework for awarding spousal support, *both in terms of awarding the correct type of support* and for an appropriate amount and time, fulfills not only the statutory directives *but*

-10-

*also alimony's fundamental purpose of eliminating spousal dependency where possible." Id.* at 110 (emphasis added).

When determining whether to award alimony and the "nature, amount, length, and manner of payments," courts are required to consider the factors set forth at Tennessee Code Annotated § 36-5-121(i). *Id.* at 109. These include but are not limited to the relative earning capacity, obligations, needs, and financial resources of each party, the relative education and training of each party, duration of the marriage, the age, mental condition and physical condition of each party, the separate assets of each party, provisions made with regard to the marital property, the standard of living the parties established during the marriage, the extent to which each party has made such tangible and intangible contributions to the marriage, the relative fault of the parties, and such other factors as are necessary to consider the equities between the parties. *See* Tenn. Code Ann. § 36-5-121(i). The two factors considered most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Gonsewski,* 350 S.W.3d at 110 (citing *Riggs,* 250 S.W.3d at 457; *Bratton,* 136, S.W.3d at 605; *Robertson,* 76 S.W.3d at 342; *Burlew,* 40 S.W.3d at 470).

In this case, Wife is clearly the economically disadvantaged spouse. She has a high school education and limited work experience over the past thirteen years. Furthermore, she is limited in the type of employment she is currently capable of performing due to her health problems and physical limitations. The record reflects that, without additional education, if Wife is able to obtain employment and is able to work full time, she would likely make less than $20,000 annually. Wife's economic disadvantage is also due, in part, to her contributions at home while Husband was deployed. *See* Tenn. Code Ann. § 36-5-121(i)(10) (stating that, in determining the amount and type of alimony to award, the court should consider "[t]he extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party"). The education and training of each spouse, including the necessity of a spouse to secure further education and training in order to improve that spouse's earning capacity to a reasonable level, is a factor for consideration in the award of alimony. Tenn. Code Ann. § 36-5-121(i)(2). Wife testified that she has experience working as a teacher's aide, and that she would like to go to college to earn a teaching degree. She testified that she had already spoken to a counselor at Hopkinsville Community College, and that it would take her approximately four years to get the necessary education and training to accomplish her goal of becoming a teacher.

*Gonsewski* emphasized the importance of focusing on the economically disadvantaged spouse's need, stating: "We emphasize that, '[w]hile there is no absolute formula for determining the amount of alimony, the real need of the spouse seeking the support is the

single most important factor.'" *Gonsewski,* 350 S.W.3d at 115 (quoting *Aaron,* 909 S.W.2d at 410). Wife's income and expenses affidavit reflects a monthly deficit in excess of $3,500. With rental income from her property in Florida, the record reflects her monthly deficit would still run in excess of $2,500. In contrast to Wife, Husband is employed in the military at the E-8 level, earning in excess of $72,000 annually, and he has the potential for several more years in the military and additional earnings thereafter. *See* Tenn. Code Ann. § 36-5-121(i)(1) (setting forth the "relative earning capacity, obligations, needs, and financial resources of each party" as a factor for consideration in the award of alimony). Finally, we note that this was a marriage of long-duration, as the parties were married for almost thirteen years. *See* Tenn.Code Ann. § 36-5-121(i)(3).

Based upon our review of the record, we find no error with the trial court's decision to award Wife rehabilitative alimony of $1,800 a month from April 1, 2011 until April 1, 2012; $1,600 a month from April 1, 2012 until April 1, 2013; and $1,400 a month for twenty-four months beginning April 1, 2013. Thus, we affirm the award of alimony.

## IN CONCLUSION

The judgment of the trial court is reversed in part, affirmed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Anthony Bernard Mobley.[5]

_____
FRANK G. CLEMENT, JR., JUDGE

---

[5]Costs are generally assessed against the non-prevailing party; however, we assess costs against the appellant due to the fact the errors complained of were due in principle part to the failure of the appellant and/or his former counsel to assure that the final decree submitted to the trial court by agreement was correct and complete.