
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. WW-18-1127-BKuTa |
| NORTHWEST TERRITORIAL MINT, LLC, | Bk. No. 16-11767-CMA |
| | Adv. No. 16-1217-CMA |
| Debtor. | |
| DIANE ERDMAN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| MARK CALVERT, Chapter 11 Trustee, | |
| Appellee. | |

Argued and Submitted on October 25, 2018
at Seattle, Washington

Filed – November 27, 2018

Appeal from the United States Bankruptcy Court
for the Western District of Washington

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Christopher M. Alston, Bankruptcy Judge, Presiding

————

Appearances:     Allen Lichtenstein argued for Appellant Diane Erdman; David C. Neu of K & L Gates LLP argued for Appellee Mark Calvert, Chapter 11 Trustee.

————

Before:     BRAND, KURTZ and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Appellant Diane Erdman appeals an order denying her motion to extend the time for filing a notice of appeal under Rule 8002(d)(1)(B).[1] Because the bankruptcy court misapplied the law and certain findings of fact are illogical or not supported by the record, we REVERSE.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Events prior to Erdman's motion

The debtor, Northwest Territorial Mint, LLC ("NWTM"), filed a chapter 11 bankruptcy case on April 1, 2016. At the time of the filing, NWTM was the largest private mint in the United States, with 240 employees at facilities in six states. A $12 million judgment against NWTM for defamation was the catalyst for the bankruptcy filing. Nevada attorney Allen Lichtenstein is the appellate attorney for the defamation case.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Ross Hansen is the sole member and 100% owner of NWTM. Hansen and Erdman met in 1997, when Erdman purchased gold and silver coins from NWTM. They have lived together since 2000. Erdman worked at NWTM as a vault manager.

Shortly after NWTM's bankruptcy filing, Mark Calvert ("Trustee") was appointed as the chapter 11 trustee. Thereafter, he filed an adversary complaint against Erdman, seeking to avoid and recover various alleged fraudulent transfers. Trial was set for January 2018.

In May 2017, Erdman's counsel, DBS Law, moved to withdraw from the case due to "irreconcilable differences". With the cut-off date for discovery not until December 29, 2017, the bankruptcy court granted the motion. Thereafter, Erdman was represented by Thomas Quinlan. A few weeks prior to trial, Quinlan moved to withdraw from the case due to non-payment of fees; the bankruptcy court denied that request.

On March 28, 2018, the bankruptcy court issued its Memorandum Decision and Judgment in the Erdman adversary proceeding, finding her liable for constructive fraudulent transfers totaling $430,462.00. Hence, any notice of appeal had to be filed by April 11, 2018.

Shortly after trial and several weeks prior to entry of the Judgment, Quinlan filed his renewed motion to withdraw from Erdman's case. The bankruptcy court granted his request on March 28, 2018 — the same day it entered the Judgment against Erdman.

3

**B. Erdman's motion**

On April 18, 2018, seven days after the appeal time had run for the Judgment, Erdman, with Lichtenstein as her new attorney, filed a motion to extend the time to file a notice of appeal, seeking a one week extension to file an appeal of the Judgment ("Extension Motion"). Erdman argued that the delay in this case should be considered "excusable neglect" under *Pioneer Investment Services Co. Brunswick Associated Ltd. Partnership*, 507 U.S. 390 (1993) ("*Pioneer*"). She offered the following in support of her argument.

On March 31, 2018, Lichtenstein found his wife of 35 years collapsed on the bathroom floor not breathing and without pulse. While waiting for medical help to arrive, Lichtenstein unsuccessfully applied CPR to his wife. She was eventually revived by medical personnel but never regained consciousness. Mrs. Lichtenstein was maintained on life support for the next three days while Lichtenstein, in consultation with physicians, made the decision whether to take her off life support. Her heart stopped again on April 3. She was again revived.

Faced with the reality that Mrs. Lichtenstein had no brain activity and that her chances of recovery were slight to none, Lichtenstein made the difficult decision to take his wife off of life support. She passed away on April 4, 2018. Later that same day, Erdman contacted Lichtenstein about appealing the Judgment. He knew her from another representation and told her he was willing to help her but that he was not in any condition to

4

deal with her case at the moment. Lichtenstein was unaware that the Judgment was from a bankruptcy court. Because of the circumstances, Lichtenstein said he did not follow his normal course of action of asking the client pertinent questions about the case upon contact and mistakenly assumed that the appeal time was 30 days.

On April 12, three days after Mrs. Lichtenstein's funeral, Erdman sent Lichtenstein copies of the Memorandum Decision and Judgment. Lichtenstein said that he planned on drafting the notice of appeal that day. Only then did he realize that this was a bankruptcy case and the time for filing a notice of appeal had expired the day before, on April 11. He also discovered that Quinlan had withdrawn from the case and would not file a notice of appeal or a motion to extend the time for filing one. Lichtenstein stated that he spoke with counsel for Trustee on April 13, asking if Trustee would oppose the Extension Motion.

Trustee did not file a written opposition to the Extension Motion or appear at the April 26 hearing. At the start of the hearing, local co-counsel for Erdman stated that Trustee had informed her and Lichtenstein that he would not be opposing the Extension Motion. The court expressed surprise that Trustee did not oppose the motion. The bankruptcy judge was puzzled as to why Trustee "would beat on Ms. Erdman for as long as [he] did and then let her file an appeal which will necessarily require [T]rustee and his lawyers to devote resources, at a minimum, to an appeal going forward . . .

5

." Hr'g Tr. (Apr. 26, 2018) 5:8-10.

Lichtenstein explained that he worked from home and that several colleagues had been calling him on his private number to inquire about his wife. He assumed Erdman's call on April 4 was from one of those colleagues. Lichtenstein stated that he does not generally do bankruptcy appeals and had no reason to think Erdman's case was a bankruptcy appeal or to even ask that question, since he knew that neither she nor Hansen was in bankruptcy. Lichtenstein conceded that, in hindsight, he probably should not have taken Erdman's call.

During the court's questioning, Lichtenstein admitted that he should have inquired more about the appeal upon Erdman's initial call, but that he did not have the presence of mind to do so. Lichtenstein admitted that he did not ask about the nature of the Judgment or who the other party was for purposes of a conflict check. However, he assumed he had 30 days to gather that information.

In response to the court's question of whether he knew that Erdman had filed two prior appeals in NWTM's bankruptcy case, Lichtenstein stated that he did not. The court then opined that, based on those appeals, Erdman knew of the 14-day deadline in bankruptcy cases. Lichtenstein said he did not know if Erdman knew about the 14-day deadline and that she may have relied on prior counsel in those appeals. In any case, he believed the neglect and responsibility was his in terms of advising her that she had

6

30 days to appeal the Judgment. The court then stated:

> THE COURT:  Well, I know her most recent attorney. You would be her third, by the way, in this case. Her second lawyer, Mr. Quinlan, I'm willing to bet a whole lot of money that when he withdraw [sic], he sent her a letter saying, 'You have 14 days to appeal.' Part of me would be tempted to continue this to give you time to get a declaration from Mr. Quinlan saying he didn't do that or deposing him. But I think that would only confirm that this motion has no merit, because Ms. Erdman is well aware of the deadlines to file an appeal. She filed a cross appeal of one order that I entered, and has filed a notice of appeal of another order entered, both within 14 days of the time to act. So these are facts that you're not aware of, but this Court is.

*Id.* at 13:22-14:9.

The court issued an oral ruling denying the Extension Motion, finding that Erdman failed to establish excusable neglect under Pioneer, concluding that three of the four factors weighed against granting the extension. Erdman timely appealed the court's later written order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) & (H). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion in denying the Extension Motion?

////

## IV. STANDARDS OF REVIEW

We review for abuse of discretion the bankruptcy court's decision to grant or deny a motion for an extension of time to file a notice of appeal. *Pincay v. Andrews*, 389 F.3d 853, 858 (9th Cir. 2004) (en banc). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011). A bankruptcy court's factual finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## V. DISCUSSION

A notice of appeal must be filed within 14 days of entry of the order appealed from. Rule 8002(a). However, a bankruptcy court may extend the time for filing the notice of appeal, so long as the party requesting the extension files the motion prior to the expiration of the 14-day period or within 21 days after that time, if the party shows excusable neglect. Rule 8002(d)(1)(A) & (B). Because Erdman filed her Extension Motion on the 7th day of the 21-day extended period, she had to show excusable neglect for the extension.

### A.     The excusable neglect standard under Rule 8002(d)(1)(B).

In *Pioneer*, the Supreme Court considered the meaning of excusable neglect in the context of a motion under Rule 9006(b)(1). But *Pioneer* also

8

applies to motions to extend the time to file notices of appeal under both FRAP 4(a)(5) and Rule 8002(d)(1)(B). *Marx v. Loral Corp.*, 87 F.3d 1049, 1054 (9th Cir. 1996), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (applying FRAP 4(a)(5)); *Warrick v. Birdsell (In re Warrick)*, 278 B.R. 182, 185 (9th Cir. BAP 2002) (applying former Rule 8002(c)).

Excusable neglect "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence," *Pioneer*, 507 U.S. at 394, and includes "omissions caused by carelessness," *id.* at 388. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's (or its lawyer's) omission." *Id.* at 395.

Under *Pioneer*, in considering whether the moving party has shown excusable neglect, the court considers:  (1) danger of prejudice to the non-moving party; (2) length of the delay caused by the neglect, and its potential impact on judicial proceedings; (3) reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. *Id*. *Pioneer* indicates that "a district court may find neglect 'excusable' if it is caught quickly, hurts no one, and is a real mistake, rather than one feigned for some tactical reason — *even if* no decent lawyer would have made that error." *Pincay*, 389 F.3d at 860 (Berzon, J., concurring).

9

## B.    Analysis

Lichtenstein's failure to ask Erdman questions regarding the nature of her appeal, his erroneous assumption that she had 30 days to file it and his telling her so constitute neglect. The question is whether his neglect was "excusable." Finding that three of the four *Pioneer* factors weighed against the extension, the bankruptcy court determined that the neglect was not excusable. Although the court engaged in the *Pioneer* analysis to guide its excusable neglect determination, it erred in its analysis of prejudice, and its findings as to the movant's good faith (or lack thereof) were illogical or not supported by the record.

### 1.    Danger of prejudice to the non-moving party

The bankruptcy court found that the expense and delay caused by an untimely appeal posed a danger of prejudice to Trustee, the estate and innocent administrative creditors:

> THE COURT: The [non-moving] party in this case is a bankruptcy trustee who is in the process of liquidating a Chapter 11 estate. Now, maybe they have failed to remember their duty to other creditors in this case by simply rolling over on this motion. But the Court will note that while it appeared that there was no prospect of any distribution to unsecured creditors, there are potentially millions of dollars in administrative expense claims, including nearly $5 million in professional fees accrued, a recently-filed request by the former CEO for over $200,000, a potential $700,000 Warren [sic] Act claim that will be asserted by terminated employees, and perhaps a million-dollar breach of lease claim asserted by the landlord.

> While one may not have sympathy for the professionals who voluntarily took on the risk of not being paid, these other parties did not and are involuntary administrative creditors. Allowing a tardy appeal to proceed will mean that the trustee will have to incur legal fees to defend the appeal, thereby significantly increasing the costs of administration. The appeal will also delay a final resolution to this adversary proceeding and may delay or preclude the trustee from pursuing collection of the judgment amount from Ms. Erdman or other potential sources. Allowing Ms. Erdman to proceed will result in a demonstrable detriment to innocent administrative creditors in this case.

Hr'g Tr. (April 26, 2018) 17:17-18:16.

Erdman argues that the bankruptcy court misapplied the "prejudice" prong of *Pioneer* by finding that the only prejudice suffered would be the time and expense of Trustee having to defend an appeal. We agree.

Costs to defend an appeal and delaying resolution of the Erdman adversary proceeding is the same "prejudice" Trustee (and the estate, if it is also considered the non-moving party here) would suffer if the appeal had been timely filed. "Being exposed to an appellate review of the bankruptcy court's judgment is not the type of prejudice that *Pioneer* was addressing." *In re Coleman*, 2009 WL 2882955, at *2 (Bankr. D.D.C. July 15, 2009). "If it were, a belated motion for an extension of time could never be granted because the obvious result of granting such a motion is to put one party to the burden of defending an appeal that would otherwise not exist." *In re Hall*, 259 B.R. 680, 682 (Bankr. N.D. Ind. 2001). *Accord Burt v. Nat'l*

*Republican Club of Capitol Hill*, 828 F. Supp. 2d 115, 128 (D. D.C. 2011), *aff'd*, 509 F. App'x 1 (D.C. Cir. 2013) (no neglect would ever be excusable if the prejudice of having to spend the time, effort and expense to litigate an appeal was dispositive) (applying FRAP 4(a)(5)); *Santacroce v. Funkhouser (In re Funkhouser)*, 2014 WL 1419213, at *2 (Bankr. N.D.W.V. April 14, 2014) ("[A]lthough granting the Funkhousers' motion [to extend the time to file a notice of appeal] may impede the Santacroces' ability to execute upon their judgment and cost them additional expense and delay in that regard, those costs are inherent in defending an otherwise timely appeal; thus the prejudice to the Santacroces is not inordinate."); *Sonders v. Mezvinsky (In re Mezvinsky)*, 2001 WL 1403525, at *2 (Bankr. E.D. Pa. Oct. 5, 2001) (same).

The court made no other findings to support its determination that prejudice weighed against the extension request, and nothing in the record suggests that Erdman's short delay in filing a notice of appeal — seven days — would impair Trustee's ability to defend an appeal. In fact, granting the motion would have involved virtually no delay in the proceeding. Had the appeal been allowed to proceed, it might have already been decided by this court or would be before us now as opposed to this order.

Erdman also argues that the bankruptcy court erred by not considering the prejudice *she* would suffer by losing her appeal right if the Extension Motion were denied. Erdman does not cite any relevant

authority to support her argument that prejudice to the moving party must be considered. We do not believe it was error for the court to decline to consider prejudice to Erdman.

### 2. Length of delay and potential impact on judicial proceedings

Erdman argues that the bankruptcy court erred by failing to analyze the second *Pioneer* factor — the length of the delay caused by the neglect, and its potential impact on judicial proceedings. The relevant delay is the seven day period between the expiration of the initial appeal period and Erdman's filing of the Extension Motion.

While the court did not discuss this factor expressly, it did conclude that "three of the four factors weigh[ed] against" Erdman's request. Given the explicit findings against her on prejudice, the reason for the delay and good faith, the court apparently found this factor weighed in her favor, or was at least neutral. In any case, this factor weighs in favor of granting the extension. Lichtenstein had intended to file the notice of appeal on April 12, which was one day past the initial appeal deadline. Once he realized the situation, he immediately went into action. He called Trustee's counsel on April 13 asking if he would oppose an extension, got admitted to the court pro hac vice, filed the Extension Motion on April 18, moved for an order shortening time, and appeared at the hearing on April 26. Clearly, the delay here was brief and would not significantly affect any judicial proceedings.

**3.      The reason for the delay**

Lichtenstein explained that the reason he failed to file a timely notice of appeal for Erdman was because he mistakenly assumed that the appeal period was 30 days. This was due to his extreme grief over his wife's passing just hours before Erdman called him. Because of the exceptional circumstances, he did not make the normal inquiries he would have to a prospective client, which would have revealed the shorter appeal time. Excusable neglect can include sudden death, disability or illness of counsel, a close family member of counsel (such as a spouse or child) or the party. *See Allied Domecq Retailing USA v. Schultz (In re Schultz)*, 254 B.R. 149, 154 (6th Cir. BAP 2000) (applying former Rule 8002(c)); *In re Mizisin*, 165 B.R. 834, 835 (Bankr. N.D. Ohio 1994) (applying former Rule 8002(c)).

The bankruptcy court determined that Lichtenstein's reason for the delay was not excusable, commenting that it was an "almost unbelievable situation." Specifically, the court found:

> THE COURT: Ms. Erdman has found an attorney to handle her appeal, apparently unable to find one in the state of Washington, and has found the one attorney who agreed to take on the matter, but was also too distraught to meet the minimum standard of care for a lawyer who claims to regularly handle appeals. The situation is not akin to the lawyer in *Pincay* who relied on a paralegal who misread the rule to state that the appeal deadline was 60 days rather than 30.
>
> In this case, we have a lawyer who knows that the appeals have

14

deadlines and knows in particular that bankruptcy court orders must be appealed in 14 days, and yet agreed to file the appeal, but didn't inquire as to the nature of the case, didn't ask Ms. Erdman what court she was in, didn't ask her to send him any papers or even a caption, didn't conduct a Pacer search, didn't even ask who the other party was and didn't conduct a conflict check. If he had done just one of these things, it would have revealed to him that the order to be appealed was entered in bankruptcy court.

Mr. Lichtenstein did not misread a rule. He failed to ask any questions about the time sensitive engagement to find out what rules apply. This Court cannot allow Mr. Lichtenstein or any other attorney who practices in this court to believe that such conduct could ever be excusable. If his mental anguish is so great that he was unable to ask basic engagement questions, the Court seriously questions why he is even pursuing this appeal now. He should take a break from the practice of law.

Hr'g Tr. (April 26, 2018) 16:10-17:13.

Erdman argues that the court focused on Lichtenstein's admitted neglectful acts and gave little consideration to whether those acts were excusable given the intervening circumstances of his wife's death hours earlier. We read the court's ruling differently. It found that the numerosity of Lichtenstein's mistakes could never be excusable, notwithstanding the traumatic circumstance of his wife's sudden and untimely death.

While we believe that the court could have found Lichtenstein's neglect excusable, we may not substitute our judgment for that of the trial judge on this factor. *See United States v. Henderson*, 241 F.3d 638, 646 (9th

15

Cir. 2000). Nonetheless, equity, the extraordinary circumstances presented in this case and, as we explain more below, the absence of other factors supporting denial of the Extension Motion required that it be granted.

### 4. Whether the movant acted in good faith

Focusing on Erdman's conduct, the bankruptcy court found that there was an improper motive for the delay in filing the Extension Motion. In essence, the court did not believe that Erdman relied on Lichtenstein's advice that she had 30 days to file her appeal of the Judgment, because she knew the rule was 14 days. Ultimately, the court found that Erdman's conduct evidenced an intent to set up an attorney for a malpractice claim rather than to earnestly seek a reversal of the Judgment:

> THE COURT: Finally, this Court has some serious question as to Ms. Erdman's conduct and whether or not she is acting in good faith. Notably absent is a declaration from her that she did not know the deadline for appealing orders in bankruptcy cases. That is because this Court finds she could not truthfully make that statement. Notwithstanding Mr. Lichtenstein's admission that he told her he believed that they had 30 days, she has had experience in this case. She filed a cross appeal of one order, and filed that within 14 days of the initial appeal. Then she filed a notice of appeal of another order within 14 days of its entry by this Court. See Docket number 726 and 767.
>
> Ms. Erdman knew that she would have two weeks after entry of the order in the adversary proceeding to file an appeal. The Court took the matter under advisement on February 6th. Her trial lawyer filed and served a motion to withdraw on February 21.

16

This Court did not enter its ruling and judgment in the adversary proceeding until March 28th. Thus, Ms. Erdman had a month to find another attorney to handle any appeal, yet she did not find an attorney, apparently, until April 4th and did not send him any information until April 12th, one day after the expiration of the 14-day deadline to file an appeal.

Because Ms. Erdman has had recent experience with appeals in this court and knows the time sensitivity of filing an appeal, she should have immediately sent all papers to Mr. Lichtenstein. Her decision to wait and delay providing basic information to her attorney in a timely manner indicates that she does not have a good faith intent to pursue an appeal. In reality, it appears to this Court that her actions evidence an intent, perhaps, to set up other lawyers for a malpractice claim rather than seek a reversal of this Court's order.

Hr'g Tr. (April 26, 2018) 18:17-19:24.

Erdman argues that the bankruptcy court erred by ignoring the question of whether Lichtenstein — the attorney claiming excusable neglect — acted in bad faith and instead focusing on unverified assumptions about what she knew or did not know about applicable deadlines. Lichtenstein's conduct was under scrutiny here as well, because "the proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Pioneer*, 507 U.S. at 397 (emphasis in original). The court seemed to find that even if Lichtenstein's neglect was excusable, it was negated by Erdman's intentionally bad conduct.

Regardless, we agree with Erdman that the court's findings on this

factor are illogical or are unsupported by the record. We first take issue with the finding that Erdman "knew" the appeal time was 14 days given her experience with two prior appeals and Quinlan's "probable" departing advice that she had 14 days to appeal the Judgment. The record does not support the court's finding that Erdman knew of the 14-day rule. Counsel filed the two prior appeals, not Erdman, and there was no evidence in the record that appeal deadlines were ever discussed with her. Any purported legal advice from Quinlan about a 14-day appeal time was pure speculation. The record established that Lichtenstein told Erdman she had 30 days to file her appeal, nothing else.

The court also made much of the fact that Erdman waited what it believed was an unreasonable amount of time to find an appeal attorney, and that she sent the relevant documents to Lichtenstein one day after the appeal deadline. These facts apparently evidenced her grand scheme to sue Lichtenstein (or some other poor attorney) for malpractice, because she knew that it was too late to appeal the Judgment. Nothing in the record supports these inferences. The court chastised Erdman for waiting "a month" to find an appeal attorney. Quinlan filed his renewed motion to withdraw on February 21; the order granting that request was entered March 28, the same day as the Memorandum Decision and Judgment. It is possible that Erdman thought the court might deny Quinlan's withdrawal request like it had before. However, and more importantly, as of March 27

there was no adverse judgment requiring the need for an appeal. Thus, Erdman had no real reason prior to March 28 to start looking for another attorney. Contacting Lichtenstein seven days later, on April 4, was not unreasonable. And the record is devoid of any evidence that Erdman failed to take any action before then.

As for Erdman waiting until April 12 to send him the Memorandum Decision and Judgment, Lichtenstein had no answer. However, the court's finding that she did so to set him up for a malpractice claim is illogical and unsupported. It would mean that Erdman deliberately sabotaged her own appeal by not sending the documents sooner in hopes of a favorable malpractice suit against Lichtenstein. A malpractice claim would be far more difficult to prosecute (and win) than an appeal of the Judgment. Furthermore, to suggest that Erdman had no intent to file an appeal of the Judgment defies all logic. It makes no sense that she would appeal other relatively minor matters in NWTM's bankruptcy case but not a $430,000 adversary judgment against her. In short, the court's finding that the reason for the delay for filing the Extension Motion was not a real mistake and feigned for some tactical reason is not supported by the record.

## VI. CONCLUSION

We conclude that the bankruptcy court abused its discretion in determining that Erdman's failure to timely file the Extension Motion was not attributable to excusable neglect. It applied an incorrect standard of law

19

for the prejudice factor of *Pioneer*, and its findings with respect to good faith were either illogical or unsupported by the record. These errors tainted its ultimate finding that Lichtenstein's neglect was not excusable. Accordingly, we REVERSE.